Jack L. EASSON, June B. Easson, and Envoy Apartments, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Jack L. EASSON, June B. Easson, and Envoy Apartments, Respondents.

No. 17170.

United States Court of Appeals Ninth Circuit.

Sept. 8, 1961.

Nathan L. Cohen, Ralph R. Bailey and Maguire, Shields, Morrison, Bailey & Kester, Portland, Or., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Kenneth E. Levin, Dept. of Justice, Washington, D. C., for respondent.

Before ORR, BARNES and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

The Tax Court had jurisdiction to hear taxpayer's [1] petition to redetermine a deficiency asserted by the Commissioner (§ 272(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 272(a)). This court has jurisdiction on appeal (§ 7482, Internal Revenue Code of 1954, 26 U.S.C.A. § 7482).

In 1952 taxpayer owned and operated an apartment house in Portland, Oregon. On June 19, 1952, taxpayer encumbered the apartment house with a $250,000 mortgage, taxpayer himself signing and assuming personal liability on the notes underlying the mortgage. In October of 1952, taxpayer formed the Envoy Apartments, an Oregon corporation, and transferred the property, subject to the mortgage, to the corporation in exchange for all of its capital stock. Taxpayer, however, remained personally liable on the notes. The Tax Court found that taxpayer had a legitimate business purpose in consummating this transaction and that his principal purpose was not tax avoidance.

At the time of the transfer, the basis of appellant's property was $87,214.86, and its fair market value was $320,000. The principal balance of the mortgage was $247,064.01. Taxpayer and his wife, on their 1952 returns, reported no gain in connection with the transfer of the apartment to the corporation. They claimed that the transfer was tax free under § 112(b) (5), Internal Revenue Code of 1939, 26 U.S.C.A. § 112(b) (5). The Commissioner, however, determined that taxpayer realized a gain on the transaction and determined further that such gain was taxable at ordinary income tax rates rather than at capital gains rates.

## I.

### The Tax Court's Decision

The Tax Court agreed fully with neither the Commissioner nor the taxpayer. It held that only a portion of the gain should be recognized and taxed in 1952. The taxable portion, the court held, was the difference between taxpayer's basis ($87,214.86) and the principal balance on the mortgage ($247,064.01), viz. $159,849.15. Of this amount part was taxable at ordinary income rates and part at capital gains rates. The portion of the gain allocated to depreciable assets (the building) was taxable at ordinary income rates, while the portion of gain attributable to the land was taxed at capital gains rates. This result derives from the court's interpretation and interrelation of §§ 112(b), 112(c), 112(k), 113(a) and 117(o) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 112(b, c, k), 113(a), 117(o).

Section 112(b) (5) provides that no gain or loss is to be recognized when property is transferred to a corporation solely in exchange for stock of the corporation, if immediately after the transfer, the transferor is in control of the corporation. Thus, at first blush, it would appear that taxpayer should prevail; he exchanged the apartment for stock of the corporation and immediately after the

---

1. Taxpayers—husband and wife—are herein referred to for convenience as "taxpayer" or "petitioner."

exchange he was in control of the corporation. He has met the requirements of § 112(b) (5). But there was more to the transaction than just an exchange of an apartment house for stock. The apartment was transferred subject to a mortgage and this circumstance can, in some circumstances, alter the tax consequences of the transaction. Subsection (c) (of § 112) provides that gain will be recognized in a § 112(b) (5) transaction to the extent that "boot," i. e., money or property other than stock, is received by the taxpayer. Can the transfer of encumbered property be considered as the receipt of "boot"? Section 112(k) provides a clear answer to this question.[2] It provides that the transfer of property subject to a liability does *not* constitute the receipt of money or other property within the meaning of § 112(c), and the existence of the encumbrance does not disqualify the exchange for tax-free treatment under § 112(b) (5)—*unless* the purpose of the taxpayer, in this regard, was tax avoidance or was not a bona fide business purpose. The burden to establish his exemption is on the taxpayer. Here, however, the Tax Court specifically found that taxpayer was not principally motivated by considerations of tax avoidance and that he had a bona fide business purpose. Thus, taxpayer met the test of the specific provisions of § 112(k); the provisions of § 112(c) are, therefore, inapplicable to this transaction. It would seem, then, that the entire transaction comes within § 112(b) (5), and that no gain should yet be recognized. Nevertheless, the Tax Court did not so hold.

The Tax Court noted that a statute must be construed in accordance with its purposes and must not be so interpreted as to lead to "absurd results." The purpose of § 112(b) (5) is not to exempt

2. It reads as follows:

"(k) [*as added by* § 213(a), Revenue Act of 1939, *and amended by* § 121(d) (5), Revenue Act of 1943, *supra*] Assumption of liability not recognized. Where upon an exchange the taxpayer receives as part of the consideration property which would be permitted by subsection (b) (4), (5), or (10) of this section to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumes a liability of the taxpayer or acquires from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as 'other property or money' received by the taxpayer within the meaning of subsection (c), (d), or (e) of this section and shall not prevent the exchange from being within the provisions of subsection (b) (4), (5), or (10); except that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition was a purpose to avoid Federal income tax on the exchange, or if not such purpose, was not a bona fide business purpose, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this section, be considered as money received by the tax-

payer upon the exchange. In any suit or proceeding where the burden is on the taxpayer to prove that such assumption or acquisition is not to be considered as money received by the taxpayer, such burden shall not be considered as sustained unless the taxpayer sustains such burden by the clear preponderance of the evidence." (26 U.S.C. 1952 ed., § 112.)

Section 112(k) was enacted to avoid the holding of Walter Haase, 37 B.T.A. 948 and United States v. Hendler, 1938, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018. The latter case was described in the Congressional discussion preceding the enactment of § 112(k) as overturning "what had been the uniform policy and consistent practice of the Treasury Department since" enaction.

Cong.Record, Vol. 84, and see discussion and reference to Congressional History, Petitioner's Brief, pp. 29–33. And vide, Helvering v. Southwest Consol. Corp., 1942, 315 U.S. 194, 199, 62 S.Ct. 546, 86 L.Ed. 789.

In 1954, Congress re-enacted § 112(k) of the 1939 Code as § 357(a) and (b) and added the present § 357(c), which for the first time limits § 112(k) by declaring that liabilities in excess of basis shall be considered gain. This was characterized in House Report No. 1337 as having "no counterpart under the 1939 Code." Of course, the instant case arose before the passage of § 357(c).

gain from taxation but to postpone the taxable event to a later time. This postponement is effectuated by adjusting the basis of the stock which the taxpayer receives in the tax free exchange. Under § 113(a) (6), the basis of the stock is the basis of the property transferred, decreased, however, by the amount of money received, including for purposes of this section the amount of the mortgage, and increased by any gain recognized. Thus, unrecognized gain is retained as a potential liability by reducing the basis of taxpayer's stock.

As an example, if a taxpayer in a § 112 (b) (5) transaction transfers property worth $10,000 which cost him $1,000, he has an unrecognized gain of $9,000. Since his stock takes the same basis as the property transferred (viz. $1,000), he will recognize the gain when he sells the stock at a later date (presumably at $10,000). If the property transferred were subject to a $500 mortgage, taxpayer would have an additional gain of $500, the gain being currently unrecognized, however, by virtue of § 112(k). This additional gain would be postponed by reducing the basis of the stock received by the taxpayer as follows:

> Basis of stock received by taxpayer equals the basis of the property transferred, $1,000, less money or property received (including the amount of the mortgage), $500, plus the amount of gain currently recognized (–0–), viz. $500.

When taxpayer sells the stock, presumably, for $10,000, he would realize and pay tax upon a gain of $9,500.

■ As applied to the facts of this case, the computation prescribed by § 113(a) (6), would result in a *negative* basis with respect to the stock acquired by taxpayer. Taxpayer's basis on the transferred property was $87,214.86; deducting from this figure the amount of the mortgage ($247,064.01) yields a basis of minus $159,849.15. Holding that property cannot have a negative basis, the court held, further, that the adjusted basis of the stock is zero. This deter-

mination, however, would permit the gain of $159,849.15 to escape taxation, unless the nonrecognition provisions of § 112(b) (5) are ignored. If petitioner sold his zero basis stock for an amount that equaled the equity in the property transferred, $72,935.99 ($320,000, fair market value, less $247,064.01, mortgage), he would be taxed on that amount and nothing more. Taxpayer would, in effect, have converted the property into cash, realizing a gain of $232,785.14, but never paying a tax on $159,849.15 of it. Since the purpose of § 112(b) (5) is not a permit tax avoidance but only to permit postponement, it cannot, consistently with its purpose, be applied without limitation to this transaction. That portion of the gain, which if not presently recognized, will never be recognized, must be taxed now. The Tax Court thus held that $159,849.15 should be currently recognized and taxed. Further, applying § 117(*o*) relating to the sale or exchange of depreciable property between related persons, the court determined that the portion of taxable gain attributable to the building should be taxed as ordinary income. The gain attributable to the land, a nondepreciable asset, was taxed at capital gains rates. Both the taxpayer and the Commissioner have appealed from the Tax Court's decision.

## II.

### Appeal of Jack Easson, Taxpayer

■ Taxpayer contends that the Tax Court's holding does violence to the clear and unambiguous language of the code sections involved. Section 112(b) (5) states unequivocally that no gain is to be recognized when property is transferred to a corporation in exchange for stock and immediately after the exchange the transferor controls the corporation. Section 112(k) is also clear in providing that the existence of an encumbrance on property exchanged in a § 112(b) (5) transaction does not deny the transferor the benefits conferred by § 112(b) (5). When a statute is unambiguous, the courts may not look elsewhere for the legislative intent. See e. g., 62 Cases, etc., of Jam v. United States, 340 U.S. 593, 596, 71 S.Ct.

515, 95 L.Ed. 566, and 1 Mertens, Law of Federal Income Taxation, § 3.03. We believe that the Tax Court did err in failing to adhere to the unambiguous language contained in the statutes in question here. Assuredly, there is authority for departing from the literal meaning of statutory language when literal application would produce absurd results (1 Mertens, Law of Federal Income Taxation, § 3.04), but here the Tax Court's interpretation is directly contrary to the language of the statute. Section 112(b) (5) says no gain shall be recognized if certain conditions are fulfilled, yet the Tax Court says gain shall be recognized even though all the conditions enumerated are fulfilled. This is judicial legislation. If absurd results occur by reason of taxing statutes honestly and correctly followed by a taxpayer, it is up to the Congress to remedy the loophole.

Taxpayer's case on this point is bolstered by the fact that the 1954 Code contains a provision specifically covering the situation presented by this case. Section 357(c) of the 1954 Code, 26 U.S.C.A. § 357(c), expressly provides that if the transferred property is subject to liabilities which exceed the transferor's basis in the property then the excess is to be presently recognized as gain. (See note 2, supra.) The court below brushed this aside as a clarification of existing law and not new law (noting dicta to the contrary, however, in W. H. Weaver, 32 T.C. 411, 436). In commenting upon the general effect of the provisions contained in § 357(c), the House Ways and Means Committee noted that the provisions are "not found in existing law." H.R. No. 1337 (83d Cong. 2d Sess., p. A 129; U.S.Code, Congressional and Administrative News, 1954, v. 3, p. 4066). Thus the existence

and history of later legislation tend to indicate that Congress "meant" precisely what it said—and no more—when it adopted § 112(b) (5) of the 1939 Code.

In departing from the express language of § 112(b) (5), the Tax Court relied upon the fact that a literal interpretation of the section would lead to absurd results. If no such absurd consequences are inherent in a literal application of the section, then no justification for the Tax Court's departure is established. The absurd result feared by the Tax Court was that § 112(b) (5) would become an instrument of tax exemption rather than of tax deferment. This conviction stemmed from the Tax Court's belief that there could be no such legal phenomenon as a negative basis. And this is perhaps the most crucial issue in the appeal presented by the taxpayer.

Can property have a negative basis? There is little law on the subject,[3] and we are far from satisfied that the Tax Court's outright rejection of this concept is justifiable. Why, then, did the Tax Court conclude that property cannot have a negative basis? In footnote 8 of its opinion (Record, p. 59), the court explains:

"It is a fundamental concept of income taxation to tax gain when its fruits are available for payment of the tax. If a negative base were allowed then recognition of gain could be deferred until a subsequent loss sale or even an abandonment, and unless taxpayer had other resources the tax would never be collected."

The Tax Court, thus, rejects the negative basis concept on the ground that it may impair the future collectibility of the tax. "We must recognize and collect the tax

---

3. For an informative and well authenticated argument in support of the recognition of a negative basis, see an unpublished thesis (but available for use on loan) in the Harvard Law School Library, written by George Cooper, entitled "Negative Basis," dated April 20th, 1961, and discussing the instant case, and listing the favorable and unfavorable considerations which might establish the val-

ue of recognizing a negative basis, under certain factual conditions, and in some, but not all, cases.

As an aside, it is interesting to note that Mr. Cooper concludes that without the "suggestion" of § 357(c) of the 1954 Code, the Tax Court would not have reached the result it did in the instant case.

now, or we may never be able to do so." But such argument is equally applicable to any provision for the deferment of tax; nonrecognition of present gain with a corresponding reduction of basis creates the prospect that tax on the deferred gain may never actually be collected. This prospect is equally real, whether basis is reduced to zero, to a point above zero, or to less than zero.

Judicial hostility to a negative basis is confined to an implication that deductions from a minus basis are undesirable. Crane v. Commissioner, 1947, 331 U.S. 1, 9–10, 67 S.Ct. 1047, 91 L.Ed. 1301. The Commissioner also cites treasury regulations which provide that basis cannot be reduced below zero. But each of these regulations governs certain specific situations and none can be said to be controlling here. For example, 26 C.F.R. § 1.167(a)–1(c) provides that an asset cannot be depreciated below a reasonable salvage value. The reason behind the regulation is fairly obvious. A businessman may take a portion of the cost of an asset each year as a part of his expense of doing business that year. Once he has depreciated the asset to its reasonable salvage value, he has taken as an expense his entire outlay for the asset (less what he will recover for salvage). There is, simply, nothing left to deduct as an expense; no more depreciation can be allowed and consequently the basis of the asset should not be further reduced.

There is some judicial support for the concept of negative basis in Parker v. Delaney, 1 Cir., 1950, 186 F.2d 455, 459, certiorari denied 341 U.S. 926, 71 S.Ct. 797, 95 L.Ed. 1357. There, Chief Judge Magruder in a concurring opinion offered an alternative theory to reach the result obtained by the majority, but "with less strain upon the statutory language." His computation involved the use of a negative basis.

The authority bearing on the question presented here, is, then, inconclusive. The "absurd result" which the Tax Court envisions is by no means the necessary consequence of literally applying § 112(b) (5). If the mandate of § 112(b) (5) is followed and none of taxpayer's gain is presently recognized, taxpayer's stock can be given a negative basis, so that all of his gain will be recognized and taxed when he sells the stock.

The second question presented by taxpayer's appeal, is entwined with the first. If taxpayer's gain on the § 112(b) (5) exchange is not to be recognized now, then there is no necessity to inquire whether it is to be taxed as ordinary or capital gain.

### III.

#### Appeal By Commissioner

This brings us to the appeal by the Commissioner. The Commissioner contends that the Tax Court erred in not holding *all* of taxpayer's gain from the exchange to be presently recognizable and taxable. This is the Commissioner's primary position and his defense of the Tax Court's decision in the appeal brought by taxpayer is only an alternative position, if his position here is rejected.

The Commissioner contends that the transaction is governed by § 112(c). This section, it will be recalled, provides that gain will be recognized in a § 112(b) (5) transaction to the extent that "boot" (money or property other than stock) is received by taxpayer. The corporation's acquisition of the property subject to the mortgage, the Commissioner contends, constitutes the receipt by taxpayer of "boot." Since the boot so received, $247,064.01, exceeds taxpayer's gain of $232,785.14 (fair market value of the property, $320,000, less taxpayer's basis, $87,214.86), all of the gain must be recognized and taxed. Section 112(k), we have seen, precludes the result contended for by the Commissioner, but § 112(k) contains an exception and it is this exception which the Commissioner relies upon now. Section 112(k) provides that

"[if] it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition was a purpose to avoid Federal income tax on the exchange, or if not such

purpose, was not a bona fide business purpose, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this section, be considered as money received by the taxpayer upon the exchange."

The Tax Court found, however, that taxpayer's "principal purpose in exchanging the property subject to the mortgage for all the capital stock of the new corporation was not to avoid Federal income tax on the exchange, and that he had a bona fide business purpose in so transferring the property." (Record, p. 51.) In so finding, the Commissioner contends, the Tax Court erred.

The Tax Court substantiated its ultimate findings by finding further that taxpayer desired to place himself in an extremely liquid position to take advantage of a business downturn which, he believed, would soon occur. In order to achieve this liquid position, taxpayer mortgaged his property, since he was unable to sell it despite efforts to do so. Having decided to retain the apartment for himself, taxpayer also decided to operate the property in corporate form, as he had done for twenty years. For tax reasons, taxpayer had taken the apartment out of the corporation when he had contemplated selling it. After deciding not to sell it, he desired to return it to corporate form in order to secure limited liability and convenience of management should he desire to move elsewhere and to turn the property over to a local real estate organization.

 The Commissioner contends (and this is the crux of his appeal) that the Tax Court missed the point of § 112(k). The "true question," missed by the Tax Court, the Commissioner contends, is whether the corporation's taking subject to the liability had some bona fide business purpose in connection with the *corporation's* business. Thus, the Commissioner contends, the question was not whether the transfer of the property subject to the liability benefited taxpayer's business interests as an investor; the issue is whether the taking-subject-to-

the-liability had any purpose with respect to the business of operating the apartments as rental property. The Tax Court found no such business purpose, and, therefore, the Commissioner claims, it erred in holding that taxpayer met ·the test of § 112(k).

We cannot go along with the Commissioner's interpretation of the statute. We believe it is erroneous. It finds little, if any, support in the case authority cited. The test suggested by the Commissioner looks to the origin of the encumbrance and to the use of the proceeds derived from it. Section 112(k), however, says nothing about the origin of the encumbrance. It says only that if a corporation "acquires from the taxpayer property subject to *a* liability such * * * acquisition shall not be considered as" boot, unless the taxpayer's principal purpose regarding the acquisition is tax avoidance or not a bona fide business purpose. Nor is there anything in the section which deals with the reasons for the encumbrance, or the manner in which the mortgage proceeds are used. If there is a good business purpose for transferring the property without first removing the encumbrance, the requirements of § 112 (k) are satisfied. Certainly, an investor's desire to remain liquid in order to capitalize on an expected business recession is a good business reason for not discharging the mortgage. Mertens, Law of Federal Income Taxation, supports the proposition that personal motives may properly induce the original hypothecation:

"Obviously many if not most incorporations involve encumbered property or the *personal indebtedness of the incorporators*. The indebtedness is therefore assumed or else the property is taken over by the corporation subject to encumbrances or liabilities against it. To impose tax based on either the assumption of liabilities by the corporation or the taking of the property subject to such liabilities would in many, if not most, cases render ineffectual the provisions for nonrecognition of gain

in cases of transfers to a controlled corporation. The present law removes the recognition of gain in such instances by providing that such assumption of liabilities or taking subject thereto shall not be considered 'other property.' " 3 Mertens, Law of Federal Income Taxation, Chapter 20, p. 104.

The Commissioner seeks support for his position in Bryan v. Commissioner, 4 Cir., 1960, 281 F.2d 238, certiorari denied 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364. The facts of that case, with some simplification, may be readily stated. Taxpayer obtained construction loans of $1,643,500 to build houses. This exceeded his actual cost by $157,798.04. After building the houses taxpayer transferred them to four corporations which in exchange gave him stock and assumed the construction loan. The Tax Court and the Court of Appeals held that taxpayer, under these circumstances, received money or other property and therefore did not meet the requirements of § 112(b) (5).

This case, however, provides only weak support for the Commissioner's position here. The Tax Court found in Bryan, as it did not find in the instant case, that taxpayer's "principal purpose with respect to the assumption of the liabilities by the four corporations was a purpose to avoid tax," and hence that it was "immaterial * * * whether such purpose might otherwise be considered not a bona fide business purpose." (W. H. Weaver, 32 T.C. 414, 434.) The court of appeals agreed that "his only purpose was to appropriate to himself a major portion of the excess funds * * * and to do it in a form which gave him hope of avoiding federal taxes on the funds with which he enriched himself." Bryan v. Commissioner, supra, 281 F.2d at page 242. There was, therefore, no problem in determining that § 112(k) did not apply.

The Bryan case does offer some support for the Commissioner's position in stating that the corporation's assumption of the mortgage in excess of taxpayer's basis constituted an indirect payment of cash to taxpayer. "As a cash payment, the nonrecognition sections would have no application." Ibid. These statements must, however, be considered as dicta in view of the court's holding that taxpayer did not meet the requirements of § 112(k) and that therefore the assumption of the mortgage constituted the payment of "money or other property." If, on the other hand, the court had held § 112(k) applicable, the statements would have been inappropriate. Section 112(k) provides, clearly, that an assumption of liability is not the payment of "other property or money," and to hold that such assumption constitutes a cash payment is a clear contradiction of the words of the statute.

■■ The Tax Court's findings regarding taxpayer's business purpose have not, in our opinion, been shown to be clearly erroneous. And the Commissioner's assertion that taxpayer is a "highly tax conscious person" (Commissioner's brief, as petitioner, p. 28), as are many citizens these days, is certainly not sufficient to overthrow the Tax Court's further finding that taxpayer's principal motive in *this* transaction was not tax avoidance. The Tax Court fully examined the evidence regarding the exchange before concluding that taxpayer entered this transaction for bona fide business reasons and not to avoid federal taxes.

In concluding his main argument, the Commissioner says, "There is nothing theoretical about Easson's gain. The unencumbered cash is in his hand, and ought to be immediately subjected to the payment of income tax." This statement, we believe, lays bare the Commissioner's basic error. The Commissioner believes that taxpayer is in a genuinely different position now than he was before the exchange. This, we believe, is not so. Before the exchange taxpayer owned an apartment house subject to a liability. After the exchange, taxpayer was the sole owner of a corporation which owned the same apartment house subject to the same liability. Where was *any* income? His stock in the corporation was worth no more than the physical asset which he owned directly before incorporation. Section 112(b) (5) was enacted to deal

with this very situation—to permit business reorganizations which, realistically viewed, do not alter the taxpayer's basic position. To use the Commissioner's phraseology, "the unencumbered cash" was in taxpayer's hand as soon as taxpayer had mortgaged the apartment, but the Commissioner does not claim that the hypothecation of the building constituted a taxable event (see brief for Commissioner as respondent, p. 13). Taxpayer's transfer of his encumbered apartment house to his wholly owned corporation did not make the cash obtained from the mortgaged transaction any more real or any less encumbered than it was before the transfer. It is our belief that the purpose of the tax laws will best be served by not assessing a tax against taxpayer until he realizes his gain in a transaction in which, realistically speaking, he actually changes his position.

 The Commissioner's next contention applies only if the court rejects his positions both as appellee and appellant. In such event, Commissioner contends, taxpayer received dividend income (§ 115 (a), 1954 Code, 26 U.S.C.A. § 115(a)) in 1953 by virtue of the corporation's payments on the mortgage. This contention is based upon the theory that the corporation's payments discharged a legal obligation of taxpayer. While the corporation may incidentally have benefited taxpayer by reducing the mortgage, it is clear that the corporation did not thereby distribute any assets. The corporation owned the apartment subject to the mortgage and as the mortgage decreased its equity in the apartment house increased. Thus when it took money out of cash and applied that amount to the mortgage, its net worth remained constant. Its total assets were unchanged because the credit to the cash account was offset by a corresponding debit to the fixed assets account. The payments of interest on the mortgage cannot, obviously, be analyzed in this way; these payments, it would seem, did constitute income to the taxpayer who would then be entitled to take the deduction for interest paid (1 Mertens, Law of Federal Income Taxa-

tion, § 9.08, p. 19, n. 74). The net effect would be to deny the deduction to the corporation. This interpretation is, however, at variance with the Commissioner's own regulations and should, therefore, be rejected. 26 C.F.R. 1.163(1) (b) provides:

> "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage may be deducted as interest on his indebtedness."

And see Mertens, supra, § 26.03.

We believe the Commissioner erred in asserting a deficiency against taxpayer based on the 1952 transaction, whereby taxpayer exchanged the apartment house for stock of Envoy Apartments. Furthermore, the Commissioner is in error in his contention that taxpayer received dividend income in 1953 by reason of mortgage and interest payments made by the corporation. We *reverse* the judgment of the Tax Court, and direct that judgment be entered in favor of taxpayer.