FRANK PEPPIATT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1521–76.      Filed February 28, 1978.

*Albert A. Rettig,* for the petitioner.
*Michael A. Zimmerman,* for the respondent.

OPINION

WILBUR, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for 1973 in the amount of $14,424. The basis for this deficiency lies in respondent's

conclusions that petitioner was not entitled to avail himself of the maximum tax rate provisions of section 1348[1] because petitioner's filing status was that of a married person filing separately. The parties originally submitted the case for a determination of the section 1348 issue on a stipulation of facts under Rule 122, Tax Court Rules of Practice and Procedure.

On September 6, 1977, respondent filed a motion for leave to file an amendment to the answer increasing the amount of the deficiency alleged to be owing. This increase was based on issues unrelated to the original issue and stipulations submitted to this Court. Petitioner did not object and subsequently filed a reply to the amended answer.

The respondent then filed a motion to sever the section 1348 issue under Rule 141, Tax Court Rules of Practice and Procedure, based on the original stipulation of facts. The issue thus presented is whether the petitioner, a married individual ineligible to file jointly under section 6013(a)(1), is precluded from utilizing section 1348 in computing his income tax liability by section 1348(c).

All of the facts have been stipulated and are found accordingly.

Petitioner, Frank Peppiatt (hereinafter Frank), resided at Palm Springs, Calif., at the time he filed a petition in this case. During the taxable year in issue, 1973, Frank was a resident alien of the United States and a citizen of Canada. During 1973, he was married to Marilyn Peppiatt (hereinafter Marilyn), a nonresident alien of the United States, who was a resident and citizen of Canada.

On his 1973 Federal income tax return Frank reported his filing status as single and computed his tax liability utilizing the provisions of section 1348. This section limits the rate at which "earned taxable income" is taxed to a maximum rate of 50 percent of such income. However, section 1348(c) limits the availability of the maximum tax provision in the case of married individuals by requiring that they file joint returns. It states that: "This section shall apply to a married individual only if such individual and his spouse make a single return jointly for the taxable year." Respondent contends that since petitioner

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

was married to Marilyn during 1973 but filed a separate return, he is ineligible to utilize section 1348 in computing his income tax liability.[2]

Petitioner objects to respondent's position as an overly literal application of the statute which contravenes its underlying purposes. He argues that the joint filing requirement presupposes that the individual has the option to file jointly and, therefore, that it does not apply to an individual like himself who, because he was married to a nonresident alien during 1973, cannot file a joint return under section 6013(a)(1).[3] In support of his interpretation of section 1348(c), petitioner presents three arguments.

First, petitioner argues that the joint filing requirement was inserted into the statute "To avoid manipulation" (H.Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 331), and he contends that none of the manipulative devices intended by Congress to be avoided can be employed by a taxpayer with a nonresident alien spouse. Secondly, petitioner argues that the intent of Congress to reduce the pressure for tax avoidance schemes by decreasing the maximum tax rates on earned income would be defeated by precluding taxpayers in his position from utilizing the section.[4] Finally, he argues that a literal application of the joint filing requirement would result in inequitable treatment not intended by Congress.[5]

While we agree with petitioner that statutes must be read in the light of their underlying intent, the unambiguous words of a section "can not be disregarded in the absence of some compelling indication that Congress did not intend them to apply to a situation like the present or that it intended them to remedy some particular evil of which the present situation is not a part." *Yarnall v. Commissioner*, 9 T.C. 616, 618 (1947), affd. per curiam 170 F.2d 272 (3d Cir. 1948). Accord, *Helvering v. City Bank*

---

[2]Sec. 1.1348–1, Income Tax Regs., simply reiterates the statute, stating that the maximum tax is inapplicable to a married individual who does not file a joint return with his spouse for the taxable year.

[3]Sec. 6013(a)(1) provides that "no joint return shall be made if either the husband or wife at any time during the taxable year is a nonresident alien." This section clearly prevents petitioner and his wife, Marilyn, from filing a joint return for 1973. See *Schinasi v. Commissioner*, 53 T.C. 382 (1969). Sec. 6013(g), which was added by sec. 1012(a), Tax Reform Act of 1976, 90 Stat. 1612, permits a qualified nonresident alien to file a joint return with a citizen of the United States, but is only effective for taxable years ending on or after Dec. 31, 1975.

[4]H. Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 330–331. See M. Asimow, "Section 1348: The Death of Mickey Mouse?" 58 Cal. L. Rev. 801, 864–870 (1970).

[5]See D. Watts, "The Maximum Tax on Earned Income: Section 1348," 26 Tax L. Rev. 1, 39–40 (1970).

*Farmers Trust Co.*, 296 U.S. 85 (1935), revg. 74 F.2d 242 (2d Cir. 1934), which affirmed 29 B.T.A. 1141 (1934); *Easson v. Commissioner*, 294 F.2d 653, 656 (9th Cir. 1961), revg. 33 T.C. 963 (1960). The language Congress chose is unequivocally clear and there is certainly no "compelling indication that Congress did not intend them to apply to a situation like the present." We find the application of section 1348(c) to taxpayers like petitioner with nonresident alien spouses to be consistent with the plain language and basic purposes of section 1348, and we therefore reject petitioner's strained and highly artificial interpretation of the statute.

The House Report accompanying what is now section 1348(c) stated that the purpose of the joint filing requirement was "to avoid manipulation." H. Rept. 91–413, *supra*, 1969–3 C.B. at 331. Although the report did not elaborate upon the types of "manipulation" to be avoided, we find two fairly obvious types of arrangements encompassed within the general ambit of that term which the joint filing requirement prevents. One such arrangement involves the allocation of income not qualifying as earned income under section 1348(b) to the spouse with little or no earned income, as well as a disproportionate share of deductions to offset the higher marginal rates. One spouse would then receive the benefits of a maximum tax rate of 50 percent on earned income while income which would normally be taxed at rates in excess of 50 percent would be taxed to the other spouse at lower rates.

Petitioner replies that this type of manipulative device already existed for taxpayers married to nonresident aliens before the adoption of section 1348 because of section 871 (which provides a 30-percent rate at which most types of a nonresident alien's income is taxed). He reasons, therefore, that Congress did not mean to preclude the use of section 1348 by the joint filing requirement to avoid this preexisting manipulative arrangement. Assuming arguendo that the circumstances are similar, petitioner's logic is nevertheless defective. Congress, in enacting a new category of benefits quite naturally focuses specific attention on potential manipulations of the new relief provision. That its attention is not also focused on potentially kindred abuses is no reason for ignoring the specific safeguards expressed in unmistakably clear language in the new provision it carefully developed. Petitioner's logic would permit taxpayers

with nonresident alien spouses to benefit from the maximum tax rate provision while engaging in what he apparently admits is a manipulative device with respect to other types of income, and yet would deny taxpayers with citizen spouses the use of similar techniques.

A second manipulative device involves the allocation of tax preference items. Section 1348(b)(2) reduces earned taxable income by section 57 tax preference items to determine the amount against which the maximum 50-percent rate is applied.[6] The excluded amount is then applied against the regular rates in section 1 which may greatly exceed 50 percent. By allocating tax preference items to the spouse with no earned income who thereby files a separate return such income could be taxed at lower effective rates. The joint filing requirement prevents such manipulations.

Petitioner responds that since the tax preference offset was added by the Conference Committee (Conf. Rept. 91–782 (1969), 1969–3 C.B. 644, 675), this could not have been the *type* of manipulation contemplated by the earlier House report. It is undoubtedly true that the House report did not contemplate the specific offset for tax preference income, ultimately enacted,[7] since the House provisions relative to tax preferences and allocations of deductions were considerably more complex and quite different from the Senate provisions imposing a minimum tax on tax preference income.[8] The simpler Senate provision was (with modifications not here relevant) adopted by the Conference Committee. The conferees also agreed to the maximum tax on earned income with a modification reducing the income qualifying for the maximum tax by tax preference items up to certain amounts.[9] In view of this chronology, although manipulation of the *specific* tax preference offset adopted by the conferees was not specifically encompassed by the language of the House report, it is, if not an identical twin, at least a first

---

[6] Sec. 302(a), Tax Reform Act of 1976, 90 Stat. 1554, substantially changed sec. 1348(b). However, these changes apply only to taxable income beginning after Dec. 31, 1976.

[7] The original House version of sec. 1348 had no adjustment for tax preference items. The Senate Finance Committee eliminated the preferred rate on earned income entirely from the version which was subsequently approved by the Senate. The Conference Committee readopted the earlier House provision with a modification reducing earned taxable income by the taxpayer's tax preference items. See M. Asimow, *supra* at 802–803.

[8] Compare H. Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 248–252, and S. Rept. 91–552 (1969), 1969–3 C.B. 423, 494–495.

[9] See Conf. Rept. 91–782 (1969), 1969–3 C.B. 644, 675.

cousin to the *type* of manipulation Congress desired to preclude.[10]

We also reject petitioner's second argument that denying him the right to utilize the 50-percent maximum tax rate on earned income will frustrate Congress' intent to discourage the use of tax loopholes. In framing the scope of the new remedial measure, Congress balanced the potential for abuse against the objective of diminishing the incentives for creating new loopholes. For the reasons already discussed, it is clear that the balance struck precludes petitioner from availing himself of the provision. Congress having made this determination, we are not at liberty to rewrite the statute for petitioner's benefit.

Petitioner's final argument—that the literal application of section 1348(c) will result in unintended hardship to taxpayers with nonresident alien spouses—overlooks two significant facts. Petitioner asks not merely for the same benefits extended others, but rather for more favorable tax treatment than that accorded other taxpayers who cannot both utilize section 1348 and still file separate returns. Additionally, while the section 6013(a)(1) prohibition against joint returns with nonresident alien spouses may create some unfortunate burdens, the countervailing benefit accorded this class of taxpayers is also considerable. On this very point, Congress recently noted that:

> The inability of a husband and wife to file a joint return where one of them is a nonresident alien has resulted in the possibility of a heavier tax burden being placed upon this group of taxpayers than other married taxpayers. For example, even though a joint return is not allowed, the spouse who files a tax return is required to use the higher rate table for married individuals filing separately. In addition, these married individuals cannot obtain the benefits of the 50-percent maximum tax on earned income because married taxpayers must file a joint return in order to obtain the benefits of that provision. * * *
>
> These disadvantages under the U.S. tax laws are, however, offset by a number of tax advantages for certain of these taxpayers. First, the foreign source income attributable to the nonresident alien spouse is not subject to any U.S. taxation. Second, if the taxpayers are subject to community property rules, one-half of the earned income of the taxable spouse is treated as being the income of the nonresident alien spouse and is not subject to U.S. taxation if

---

[10]The Senate in deleting the maximum tax expressed concern that "a given taxpayer might benefit from the 50 percent limit on earned income and still make use of tax preferences to minimize his tax on other income." S. Rept. 91–552, *supra*, 1969–3 C.B. at 619. The resolution of the differences between the Houses on this provision must have again focused on the real concern for potential manipulation expressed by both Houses of Congress. When the legislative history is read as a whole, and not in the staccato chronological fashion urged by petitioner, his case falls.

it is from foreign sources. [S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 251; H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 896; Staff of the Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, 215 (1976), 1976–3 C.B. (Vol. 2) 1, 227.]

Thus, Congress has been aware of the fact that section 6013(a)(1) prevents couples from utilizing section 1348 where a spouse is a nonresident alien. Far from being an inadvertent oversight, Congress consciously chose in 1976 not to extend retroactive relief to those in petitioner's position when, in that year, section 6013(g) was added permitting nonresident aliens to file joint returns. The Senate approved version of this section would have permitted couples to elect joint return treatment for all open years beginning after December 31, 1971. This amendment was not adopted by the Conference Committee which made the provision effective only for taxable years ending on or after December 31, 1975. S. Rept. 94–1236 (1976), 1976–3 C.B. (Vol. 3) 807, 859.

In summary, we find that the joint return requirement for section 1348(c) precludes petitioner from utilizing the maximum tax rates on earned income of section 1348, and we find such an application of the requirement consistent with the underlying purposes of the statute.

To allow for an appropriate consideration of the other issues raised by the amendment to answer,

*An appropriate order will be issued.*