SYDNEY C. KRAVETZ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kravetz v. Commissioner
Docket No. 703-84.
United States Tax Court
T.C. Memo 1985-496; 1985 Tax Ct. Memo LEXIS 135; 50 T.C.M. (CCH) 1122; T.C.M. (RIA) 85496; September 23, 1985. Stanley Schoenbaum, for the petitioner. Patricia Y. Taylor and Marty J. Raisanen, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent determined deficiencies in the amounts of $24,921 and $21,848 in petitioner's Federal income *138 taxes for 1980 and 1981, respectively. After concessions, the only issue for decision is whether petitioner, a United States citizen married to a nonresident alien, is entitled to compute his personal service income under section 1348, [1] even though he elected not to file joint returns but filed as the head of a household. All of the facts are stipulated. Petitioner Sydney C. Kravetz resided in Mexico City, Mexico, at the time the petition was filed. He filed Federal income tax returns for 1980 and 1981 with the Internal Revenue Service Center, Cornwells Heights, Pennsylvania. During 1980 and 1981, petitioner was a United States citizen married to a nonresident alien. [2] In 1980 and 1981, petitioner maintained a household in Mexico City, Mexico, which was the principal place of abode of his stepson, a member of such household. During such years, petitioner's stepson had not attained the age of 19 years and was not married. Petitioner was entitled to a personal exemption for his dependent stepson for both the 1980 and 1981 taxable years. *139 Petitioner filed his 1980 and 1981 Federal income tax returns as the head of a household. On both returns, petitioner computed his tax on personal service income under section 1348 (maximum tax computation). Petitioner and his spouse were eligible, but did not elect, to file joint Federal income tax returns for 1980 and 1981. In the notice of deficiency, respondent denied petitioner the benefit of the maximum tax rates prescribed by section 1348 for personal service income, stating that "you must file a joint return to be eligible to use the maximum tax rates." Section 1348[3] provides for a maximum tax rate of 50 percent on an individual's personal service income. However, section 1348(c) limits the maximum tax provision with respect to married individuals as follows: Married Individuals.--This section shall apply to a married individually only if such individual and his spouse make a single return jointly for the taxable year. Respondent argues that, because petitioner was married and did not elect to file a joint return with his nonresident alien spouse, the restriction in *140 section 1348(c) precludes his use of the maximum tax computation. Petitioner contends, however, that he qualifies as the head of a household under section 2(b) and is so considered for section 1348 purposes. He argues that: "A head of household by definition is not married. I.R.C. sec. 2(b)(1). Petitioner cannot be a head of household and a married individual at the same time." Consequently, the argument goes, he is not to be considered as a "married individual" for the purposes of section 1348(c) and may take advantage of the maximum tax provision without filing a joint return. We hold for respondent. The precise language of section 2(b)[4] is important. We think it was carefully chosen. It is true that section 2(b)(1) defines "head of household" as an individual who, among other things, is "not married at the close of his taxable year." True, also, this definition applies "For purposes of this subtitle," i.e., the income tax provisions *141 which include section 1348. But the provision in section 2(b)(2)(C) to the effect that a taxpayer shall be considered as "not married at the close of his taxable year" if his spouse is a nonresident alien applies only "For purposes of this subsection." A taxpayer married to a nonresident alien spouse is thus "considered" as not married only for the purposes of determining whether he qualifies for the more favorable head of a household rates prescribed by section 1(b) Cf. Hampton v. Commissioner,38 T.C. 131, 136 (1962). As we read section 2(b), such a taxpayer is not so considered for the purposes of section 1348. *142 Turning to the language of section 1348(c), quoted above, we find that it refers flatly to a "married individual" and extends the benefits of section 1348 to such an individual only if he and his spouse file a joint return. It does not refer to an individual who is "considered unmarried under section 2(b)(2)(C), for example. [5] Nor does section 1348(c) deal in any way with the manner in which a taxpayer is entitled to file his return, as head of household, for example. It says, in substance, simply and plainly that, if the taxpayer is married and wishes to have the benefit of the maximum tax provisions of section 1348, he and his spouse must file a joint return. Indeed, this Court has held that an individual married to a nonresident alien spouse was not entitled to the benefits of section 1348 even though he and his spouse were not eligible under the law as it then stood to file a joint return. Peppiatt v. Commissioner,69 T.C. 848 (1978). [6]
*143 Even though petitioner qualifies for the head of household rates for 1980 and 1981, he and his nonresident alien spouse, the parties agree, were nonetheless eligible to elect to file joint returns for those years. Section 6013(g)[7] permits an individual citizen or resident of the United States and his nonresident alien spouse to elect to file a joint return. "The effect of the election is that each spouse is treated as a resident of the United States for purposes" of the income tax. Sec. 1-6013-6(a), Income Tax Regs. Both spouses become taxable on their worldwide income and become obligated to provide books, records, and other information pertinent to the determination of their tax liability. Sec. 6013(g)(5). Because petitioner and his spouse failed to make this election, section 1348(c) denies petitioner the advantage of the maximum tax provisions. *144 The legislative history of section 1348(c) requiring married persons to file jointly in order to qualify for the maximum tax computation explains its purpose as follows (H. Rept. No. 91-413 (Part 1) (1969), 1969-3 C.B. 200, 331): To preclude manipulation, the bill provides that the 50-percent limit also is not to be available to married couples who file separate returns. [8]
In Peppiatt v. Commissioner,supra, the taxpayer was married to a nonresident alien and, under the applicable law as it stood prior to the enactment of section 6013(g), was not eligible to file for 1973 a joint return with his spouse. The taxpayer, who filed a separate return in which he claimed the benefits of section 1348, argued that section 1348(c) applied only to individuals who had the option of filing joint returns and, because he did not have that option, the section did not apply to him. Citing the express requirement of section 1348(c), *145 the Court in Peppiatt rejected the taxpayer's argument and, discussing the legislative history described above, identified two manipulative were designed to prevent. The first manipulative device is the allocation of income not qualifying as earned income under section 1348(b) to the spouse with little or no earned income, and the allocation of a disproportionate share of deductions to such spouse to offset the higher marginal rates. The second manipulative device is the allocation of tax preference items within the meaning of section 57 to the spouse with no earned income rather than reducing earned income by tax preference items as required by section 1348(b)(2). The manipulative devices described in Peppiatt are as readily available to a taxpayer who files a head of household return as to one who files a separate return. True, as head of household, petitioner was required to report all of his gross income, section 1(b), but the same potential for the shuffling of income to, and deductions from, his spouse exists; allocations of United States source income to his nonresident alien spouse would be taxed to her under section 871 (at the 30-percent rate) and foreign source *146 income not effectively connected with a United States trade or business would escape tax completely. Similarly, there is the potential for allocating section 57 tax preference items to the nonresident alien spouse. We recognize that these manipulative arrangements exist for taxpayers married to nonresident aliens without regard to the adoption of section 1348 and, it may be argued, that Congress did not have these arrangements in mind when it adopted the joint filing requirements of section 1348(c). Answering this argument, the Court in Peppiatt v. Commissioner,69 T.C. at 851-852, stated: Congress, in enacting a new category of benefits quite naturally focuses specific attention on potential manipulations of the new relief provision. That its attention is not also focused on potentially kindred abuses is no reason for ignoring the specific safeguards expressed in unmistakably clear language in the new provision it carefully developed. Petitioner's logic would permit taxpayers with nonresident alien spouses to benefit from the maximum tax rate provision while engaging in that he apparently admits is a manipulative device with respect to other types of income, *147 and yet would deny taxpayers with citizen spouses the use of similar techniques. Petitioner cites Revenue Ruling 79-23, 1979-1 C.B. 3, dealing with section 63(d). That section specifies the zero bracket amount in the case of (1) a surviving spouse or married person filing jointly, (2) an individual not married, and (3) a married individual filing a separate return, and provides such amount will be zero in any other case. The ruling concludes that, notwithstanding the absence of any reference in the section to head of household, a United States citizen or resident who has a nonresident alien spouse and who files a return as head of a household has a zero bracket amount equivalent to that of a single individual. The ruling reasons that-- because section 2(b)(2)(C) of the Code treats an individual as single for purposes of qualifying for the head of household rates under section 1(b), and because Congress intended that the same zero bracket amount be used for a taxpayer whether the taxpayer uses the tax tables or rate schedules, section 2(b)(2)(C) should also govern the taxpayer's marital status for purposes of determining the taxpayer's zero bracket amount under section *148 63(d). [Rev. Rul. 70-23, 1979-1 C.B. 3, 4]
While we do not consider a revenue ruling controlling authority, we do not find this ruling inconsistent with the conclusion we have reached. Conference Report 95-263, 1977-1 C.B. 519, 520, accompaying the Tax Reduction and Simplification Act of 1977, in which the zero bracket amount concept was adopted, clearly expressed Congress' intent that all taxpayers who file as head of household should have a zero bracket amount equivalent to that of a single individual even though the taxpayer described in the ruling was, in fact, married. The ruling concludes that reading section 63(d) literally would lead to absurd results and that, therefore, the clearly expressed legislative intent must be followed. [9] No legislative history supports petitioner's position in the instant case; to the contrary, as discussed above, the legislative history of section 1348(c) supports respondent's determination. In summary, petitioner had the right to elect to file returns for 1980 and 1981 as the *149 head of a household or jointly with his nonresident alien spouse. As we have discussed, each option provided certain favorable and certain unfavorable consequences which petitioner no doubt weighed in exercising his election to file the head of household returns. Having realized the favorable advantages of the election he made, he is not now entitled to take advantage of the maximum tax provision which is expressly reserved under section 1348(c), in the case of married individuals, to married couples who file joint returns. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. Petitioner did not live apart from his nonresident alien spouse at any time during such years. Petitioner did not have a spouse who died during either of his two taxable years immediately preceding 1980 or 1981. See sec. 2(b), n. 4, infra.↩
3. Sec. 1348↩ was repealed by Pub. L. 97-34, 95 Stat. 172, effective for taxable years beginning after Dec. 31, 1981.
4. Sec. 2(b) provides, in pertinent part, as follows: (b) Definition of Head of Household.-- (1) In general.--For purposes of this subtitle, an individual shall be considered a head of a household if, and only if, such individual is not married at the close of his taxable year, is not a surviving spouse (as defined in subsection (a)), and either-- (A) maintains as his home a household which constitutes for more than one-half of such taxable year the principal place of abode, as a member of such household, of-- (i) a * * * stepson * * * of the taxpayer, but if such * * * stepson * * * is married at the close of the taxpayer's taxable year, only if the taxpayer is entitled to a deduction for the taxable year for such person under section 151 * * * * * * (2) Determination of status.--For purposes of this subsection-- * * * (C) a taxpayer shall be considered as not married at the close of his taxable year if at any time during the taxable year his spouse is a nonresident alien; * * *↩
5. Sec. 1.1348-1, Income Tax Regs., provides that whether a taxpayer is married for purposes of section 1348 is determined under section 153; the regulation makes no reference to section 2(b)(2)(C). Sec. 153 was repealed by Pub. L. 94-455, effective for taxable years beginning after Dec. 31, 1976. Sec. 154 was redesignated as sec. 153 and sec. 153(5) contains a cross-reference to sec. 143 for determination of marital status. Sec. 143(a) provides: (a) General Rule.--For purposes of part V-- (1) The determination of whether an individual is married shall be made as of the close of his taxable year; except that if his spouse dies during his taxable year such determination shall be made as of the time of such death; and (2) An individual legally separated from his spouse under a decree of divorce or of separate maintenance shall not be considered as married. ↩
6. In 1973, the year at issue in Peppiatt v. Commissioner,69 T.C. 848 (1978), citizens or residents of the United States married to nonresident aliens were not permitted to file joint returns. Sec. 6013(a)(1). Beginning in 1977 such taxpayers may elect to file jointly under sec. 6013(g). The taxpayer argued that to deny the benefits of sec. 1348↩ to married coupled who could not file jointly would frustrate congressional intent.
7. Sec. 6013(g) provides, in pertinent part, as follows: (g) Election To Treat Nonresident Alien Individual as Resident of the United States. (1) In general.--A nonresident alien individual with respect to whom this subsection is in effect for the taxable year shall be treated as a resident of the United States-- (A) for purposes of chapters 1 and 5 for all of such taxable year, * * * * * * (2) Individuals with respect to whom this subsection is in effect.--This subsection shall be in effect with respect to any individual who, at the close of the taxable year for which an election under this subsection was made, was a nonresident alien individual married to a citizen or resident of the United States, if both of them made such election to have the benefits of this subsection apply to them. * * *↩
8. Sec. 1.1348-1, Income Tax Regs.↩, reiterates the statute, stating that the maximum tax is inapplicable to a married individual who does not file a joint return with his spouse for the taxable year.
9. Rev. Rul. 79-23, 1979-1 C.B. 3↩, applies the same rule to the general tax credit provisions of sec. 42(a) and (c).