Robert M. JEWELL and Mildred Jewell, Husband and Wife, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18945.

United States Court of Appeals Ninth Circuit.

April 17, 1964.

Davison, Davison & Copple and R. H. Copple, Boise, Idaho, for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Timothy B. Dyk, Attys., Dept. of Justice, Washington, D. C., Sylvan A. Jeppesen, U. S. Atty., Robert E. Bakes, Asst. U. S. Atty., Boise, Idaho, for appellee.

Francis J. Butler and Scott B. Lukins, Spokane, Wash., for amicus curiae.

Before HAMLEY, Circuit Judge, MADDEN, Judge of the Court of Claims, and JERTBERG, Circuit Judge.

MADDEN, Judge.

The appellants sued the United States in the United States District Court for a refund of federal income taxes, penalty and interest which they paid for the taxable years 1953 through 1957, and which, they claimed, they should not have had to pay. They had filed timely claims for refund, which had been disallowed by the Commissioner of Internal Revenue. The District Court decided against the taxpayers, except as to a small amount which is not in question in this appeal. Since it is assumed that the appellant Mildred Jewell is involved in the case only because of her having signed a joint return with her husband, Robert M. Jewell, references hereinafter will be to Robert M. Jewell alone. The facts have been stipulated.

One Loree operated an oil and gasoline business in Idaho. On April 1, 1948, he incorporated the business under the name of Farmer Oil Company. Jewell purchased some seven per cent of the stock of the corporation and became general manager of the business and vice president of the company. A trust, the H. Earl Clack Trust, purchased Loree's stock in the Farmer Oil Company. On November 1, 1952, Jewell bought from the trust 263 additional shares of the stock, after which purchase he owned 21 per cent of the stock. For the 263 shares he gave his promissory note for $32,501.54, payable in ten equal annual installments, with interest at 4 per cent per annum on the unpaid balance. At the same time, one W. Turner Clack, the son of the founder of the trust, purchased 1517 shares, 79 per cent of the shares, of Farmer Oil Company from the trust, giving his promissory note for $170,450.12, on the same terms as Jewell's note. As a result of these purchases, W. Turner Clack and Jewell owned all the stock of Farmer Oil.

On December 15, 1952, the two stockholders liquidated Farmer Oil and distributed its assets to themselves in proportion to their holdings of shares. On the same day the two owners of the as-

sets transferred them to a partnership, consisting of themselves, through which they operated the business under the name of Farmer Oil Company. The promissory notes of the two partners to the trust were entered on the books of the partnership as liabilities of the partnership, but the H. Earl Clack Trust did not release W. Turner Clack nor Jewell from their individual obligations.

On June 30, 1953, six and one half months after the liquidation of the corporation Farmer Oil and the formation of the partnership, the two owners dissolved the partnership and distributed its assets to themselves, 79 per cent to W. Turner Clack and 21 per cent to Jewell, in proportion to their interests in the partnership. On July 1, 1953, they organized two corporations, Farmer Oil Wholesale Company and Farmer Oil Service Company, transferring to the corporations their respective interests in the assets which came to them on the dissolution of the partnership and taking stock in the corporations in proportion to their interests stated above. The corporations assumed, as a part of the transaction, various liabilities of the two former partners, including their liabilities upon their notes owing to the H. Earl Clack Trust. The value of the assets transferred to the Wholesale corporation was $305,977.00. The liability on the notes to the Trust, which Wholesale assumed, was $202,951.66. Other liabilities of the partners assumed by Wholesale were at least $72,787.25. The value of what Wholesale received in excess of the liabilities which it assumed was some $25,000 to $30,000.

On the day that Wholesale was organized it executed unsecured promissory notes to the H. Earl Clack Trust in the same amounts and on the same terms as the notes of W. Turner Clack and Jewell, already held by the trust, and the trust cancelled the individual notes of W. Turner Clack and Jewell. W. Turner Clack was the president of Wholesale and signed Wholesale's notes to the trust as such. He was also the trustee of the trust, and as such cancelled the individual notes of himself and Jewell to the trust.

Wholesale prospered, and out of its earnings and accumulated surplus it made the annual payments of principal and interest for the years 1953 through 1957 on its note to the trust, which note had been given to replace Jewell's note to the trust. Presumably the payments on the similar note replacing the W. Turner Clack note were also made. They are not involved in this suit.

The Government's tax authorities took the position that the payments described above, made by Wholesale, on its note to the trust which had replaced Jewell's note, were dividends distributed by Wholesale to Jewell and were taxable to Jewell as ordinary income. Jewell was required to pay taxes on that basis, and those are the taxes the refund of which he seeks in this suit.

The Government relies upon Wall v. United States, CA 4, 164 F.2d 462. In that case the court said, at page 464:

"The controlling fact in this situation was that Wall was under an obligation to pay Coleman $5,000 in the tax year and that Rosedale paid this indebtedness for Wall out of its surplus. It cannot be questioned that the payment of a taxpayer's indebtedness by a third party pursuant to an agreement between them is income to the taxpayer. * * * The transaction is regarded as the same as if the money had been paid to the taxpayer and transmitted by him to the creditor; and so if a corporation, instead of paying a dividend to a stockholder, pays a debt for him out of its surplus, it is the same for tax purposes as if the corporation pays a dividend to a stockholder, and the stockholder then utilizes it to pay his debt."

The District Court stated the questions to be considered as follows:

"Whether the payments by Farmer Oil Wholesale Company on the note it issued to Clack Trust constituted payment of constructive divi-

dends to the taxpayer and taxable as such, or

"Whether execution by Farmer Oil Wholesale Company of a note replacing taxpayer's earlier note to Clack Trust constitutes the receipt of money or other property by taxpayer and taxable under § 112 of the Internal Revenue Code of 1939."

The District Court answered both questions in the affirmative, i. e., in favor of the Government. We consider first the question first stated by the District Court.

There is a considerable air of unreality about the transactions involved in this case. The Clack Trust showed considerable complacency in the dealings between W. Turner Clack as an individual and himself as trustee of the trust, which was his creditor, and the parallel dealings of Jewell with the trust were hardly arms' length dealings. Then there is always a similar aura about dealings between controlling stockholders of a corporation and the corporation itself. But the Government does not urge these points as having any relevance in this suit. So there is no problem of treating any of the steps in the transactions as anything other than what they purported to be.

■ As we have said, the District Court held that the annual payments by Wholesale to the trust were constructive dividends to Jewel and taxable to him as such. The decision in Wall v. United States, supra, was relied upon. We think the payments in question cannot be regarded as payments by Wholesale of Jewell's debt. In the transaction of July 1, 1953, Wholesale gave its note to the trust to replace Jewell's note, and the trust cancelled Jewell's note. It is not claimed that this transaction was other than a genuine novation which accomplished what it purported to accomplish. When Wholesale made its payments to the trust in September, 1953, and in the succeeding years, it was not paying Jewell's debt but its own. Unless the novation is treated as invalid, and there is no claim that it should be so treated, the payments cannot be taxed to Jewell as dividends.

■ We now consider the District Court's second stated question, its affirmative answer to which was the alternate ground for its decision in favor of the Government. Its decision is that the assumption by Wholesale on July 1, 1953, constituted the payment by Wholesale to Jewell of "boot" money in Jewell's exchange of assets for stock in Wholesale, and that this boot money was capital gain taxable to Jewell. On this question several provisions of § 112(k) of the Internal Revenue Code of 1939 are pertinent. Section 112(b) (5) says:

"(5) *Transfer to corporation controlled by transferor.*—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation."

The transfers by Jewell and W. Turner Clack complied with the specifications of § 112(b) (5). The two individuals transferred the assets owned by them after they dissolved their partnership, and they received in return 100% of the stock of Wholesale. However, Section 112(c) of the 1939 Code, as amended by the Revenue Act of 1943, provided:

"*Gain from Exchanges Not Solely in Kind.*—

"(1) If an exchange would be within the provisions of subsection (b) * * * (5) * * * if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

Jewell, in exchange for the assets transferred to Wholesale in exchange for stock in Wholesale, did receive, in addition to the stock, something else of value to him. Wholesale assumed his debt to the trust amounting to $32,501.54, gave its note to the trust for that amount and as a part of the same transaction Jewell's note in that same amount to the trust was cancelled. If this cancellation should be regarded as "other property or money" within the meaning of Section 112(c)(1) quoted immediately above, that is, should be regarded as "boot," then, to the extent of the value of the cancellation to Jewell, the "boot," if it amounted to capital gain, would have to be "recognized" for tax purposes as capital gain.

As to whether the assumption by Wholesale of Jewell's liability to the trust should be treated as "boot," and recognized then and there for tax purposes, subsection (k) of Section 112 of the 1939 code, as added by the Revenue Act of 1939 and amended by the Revenue Act of 1943, is in point. It says, in part:

"(k) *Assumption of Liability not Recognized.*—

"Where upon an exchange the taxpayer receives as part of the consideration property which would be permitted by subsection (b) * * (5) * * * of this section to be received without the recognition of gain if it were the sole consideration, and as part of the consideration another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability, such assumption or acquisition shall not be considered as 'other property or money' received by the taxpayer within the meaning of subsection (c) * * * of this section and shall not prevent the exchange from being within the provision(s) of subsection (b) * * * (5). * * *"

Jewell's situation seems to fit the foregoing language exactly. As a part of the exchange in which Jewell received his stock in Wholesale and Wholesale received the assets of the going business from Jewell, Wholesale assumed Jewell's liability to the trust for $32,501.54. Section 112(k) says that this assumption shall not be treated as boot to Jewell, within the meaning of § 112(c), and shall not prevent the transaction from being a transaction in which no gain or loss shall be recognized, as § 112(b)(5) provides. Section 112(k) is not limited to assumptions of liabilities which are liens upon the property which is transferred to the corporation, e. g., Easson v. Commissioner, CA 9, 294 F.2d 653, because the section speaks both of acquiring property subject to a liability and of assuming a liability. It must be irrelevant that not only did Wholesale assume and agree to pay Jewell's liability to the trust, but that the trust agreeably consented to make a novation of the transaction and cancel Jewell's liability to it.

The Government urges that the word "liability" in § 112(k), although it is not limited to liabilities which are an incumbrance upon property transferred to the corporation, still does not include every sort of liability to which the transferor might be subject. The Government concedes that the liability assumed does not have to have a business purpose in connection with the corporation's business, but that if it had a business purpose when created by the transferor that would be sufficient. The Government cites Easson v. Commissioner, supra, CA 9, 294 F.2d 653, 659, on that point. If we assume that not every liability of the transferor, but only a liability related to the business which is the subject matter of the transfer, is contemplated by the statute, we think that Jewell's liability to the trust easily satisfies that requirement. He gave his note to the trust on November 1, 1952, to purchase the very interest in the oil and gasoline business which interest he transferred to Wholesale on July 1, 1953. When first acquired, that interest was a stockholder's interest in the corporation which owned the business. Six weeks later it was an undivided individual interest in the business. On the same day it became an interest in

a partnership which owned the business, and which assumed the liability. Six and one-half months later it again was an individual undivided interest in the business. The next day Wholesale was incorporated and the business was transferred to it. Short of the liability being made an actual incumbrance upon the assets of the business, it would be impossible to devise a closer and more permanent relation between the liability and the business which was transferred to the corporation when it assumed the liability.

█ If we stop at this point in § 112 (k) last quoted above, it would seem that Jewell's exchange of his assets for stock in Wholesale was a tax-free exchange, in spite of Wholesale's assumption of Jewell's liability to the trust. But we cannot stop at this point because we did not quote all of § 112(k) above. We now quote the rest of it.

> "except that if, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition was a purpose to avoid Federal income tax on the exchange, or if not such purpose, was not a bona fide business purpose, such assumption or acquisition (in the amount of the liability) shall, for the purposes of this section, be considered as money received by the taxpayer upon the exchange. In any suit or proceeding where the burden is on the taxpayer to prove that such assumption or acquisition is not to be considered as money received by the taxpayer, such burden shall not be considered as sustained unless the taxpayer sustains such burden by the clear preponderance of the evidence."

In the portion of § 112(k) last quoted, we find Congress energetically backing away from the plain and understandable language used in the part of the same section first quoted. As Congress has directed, we take into consideration the nature of the liability and the circumstances in the light of which the arrangement for Wholesale's assumption of Jewell's liability was made. We have discussed, above, the nature of the liability.

As to the language of Congress about whether "it appears that the principal purpose of the taxpayer with respect to the assumption" of the liability was "a purpose to avoid Federal income tax on the exchange," we can consider why Jewell would have done this thing the way he did it, if not principally to avoid Federal income taxes. If there had been no tax problem whatsoever, we do not see why anyone in Jewell's position, being personally obligated to pay $32,501.54 in annual installments over a period of ten years, with interest, would not have jumped at the chance to have that liability erased if he could still own the asset for which he had incurred the liability. The opportunity was particularly favorable because of the willingness of the trust to cancel the personal liability of Jewell when Wholesale agreed to pay the debt. It meant, as Jewell testified, that even if he lost his position as manager of the business, and the business, through mismanagement by others, or any misfortune, failed to prosper, Jewell would not be saddled with this personal debt. If the business did prosper, his stock ownership in it would be valuable, which was what he hoped for at the time he bought into the business in 1952. In "the circumstances in the light of which the arrangement for the assumption * * * was made," we do not see what motive other than abnormal zeal to maximize his taxes could have induced Jewell to forego the opportunity presented to him. We think that when all relevant indications point in the same direction it cannot be said that the "principal purpose" of the action taken was the purpose to avoid taxes.

But the latter part of § 112(k) as quoted above also says that even if the principal purpose of the action taken was not

to avoid Federal income tax, nevertheless if the purpose of the assumption arrangement "was not a bona fide business purpose" the assumption shall be taxed as boot to the taxpayer whose liability was assumed. We think that when, if ever, this combination of motives and action occurs, it will be noteworthy. It would require that the action be immune from both tax avoidance motive and business sense. We think this combination was not present in our instant case.

The relevant Acts of Congress, as applied to the facts of our case, seem to us to show that Congress was willing to leave the tax consequences of the exchange here involved to come out in the ultimate wash, the disposition by Jewell of his stock. The fact that he has paid nothing for it will mean that it has no basis, and he will be taxed accordingly upon what he gets for it.

We have not discussed in this opinion the numerous decisions which the parties have cited to us. They are so varied in their fact situations that it would be difficult to classify and reconcile them. Many of them are concerned with other provisions of the tax statutes. It has seemed to us that it is possible to apply the texts of the statutes directly to the facts in the instant case, and we have done that. We have come to the conclusion that the transaction before us was a non-taxable transaction, and that the annual payments which the Government seeks to tax to the appellants were payments by Wholesale of its own debts, not those of the appellant Robert M. Jewell. We have also reluctantly concluded that the findings of the District Court that the taxpayers have not shown, by a clear preponderance of the evidence, that it was not the principal purpose of the appellant, Robert M. Jewell, in entering into the arrangement here in question, to avoid Federal income tax, and that his purpose was a bona fide business purpose are, to the extent that they are findings of fact, clearly erroneous.

The judgment of the District Court, as to the issues involved in this appeal, is reversed.