**Ellis CAMPBELL, Jr., District Director of Internal Revenue, Appellant,**

v.

**Clifford W. WHEELER and Lillian V. Wheeler, Appellees.**

**No. 21442.**

Unied States Court of Appeals
Fifth Circuit.

March 18, 1965.

Crombie J. D. Garrett, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Barefoot Sanders, U. S. Atty., Dallas, Tex., for appellant, Martha Joe Stroud, Asst. U. S. Atty., of counsel.

Stanley C. Simon, Atwell, Grayson & Atwell, Dallas, Tex., for appellees.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

GEWIN, Circuit Judge:

This appeal requires application of the provisions of the Internal Revenue Code of 1954 that relate to the deferment of tax liability upon a transfer of property by a taxpayer to a corporation that he controls.

In general, whenever a taxpayer sells or exchanges property, the gain realized on the sale or exchange must be recognized for tax purposes.[1] The strict application of this principle to an exchange of property for stock in a newly-formed corporation would probably deter the organization of new corporations for valid business purposes. Hence, Congress has permitted deferment of such tax liability through the provisions of § 351 of the 1954 Code [2] in cases in which the taxpayer transfers property to a corporation solely in exchange for stock if, immediately following the transaction, he controls the transferee corporation. If the transfer is made in consideration of stock and other property or money ("boot"), gain must be recognized to the extent of the other property or money.[3] In 1938, in United States v. Hendler, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018 (1938), the Supreme Court held that an assumption of the taxpayer's liabilities in what would be an otherwise tax-free exchange within § 351(a) constituted "other property or money" as defined in § 351(b), and thus the gain had to be recognized to the extent of the liability assumed. Since transactions with the purpose of transforming a proprietorship or partnership into a corporation typically involve an assumption of the liabilities of the old entity, Congress perceived that the Hendler result imposed an unnecessary hardship in such a situation.[4] In an attempt to alleviate this problem and yet prevent the tax deferment from encouraging schemes to avoid taxes, Congress enacted § 357.[5] Under that section if a corpora-

---

1. 26 U.S.C.A. § 1002.

2. 26 U.S.C.A. § 351(a) provides in part:
   "(a) General rule.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation."

3. 26 U.S.C.A. § 351(b), which provides as follows:
   "(b) Receipt of property.—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—
   "(1) gain (if any) to such recipient shall be recognized, but not in excess of—
   "(A) the amount of money received, plus
   "(B) the fair market value of such other property received;"

4. See H.R.Rep. No. 855, 76th Cong., 1st Sess. 18–19 (1939).

5. 26 U.S.C.A. § 357 provides in part as follows:
   "(a) General rule.—Except as provided in subsections (b) and (c), if—
   "(1) the taxpayer receives property which would be permitted to be received under section 351, 361, 371, or 374 without the recognition of gain if it were the sole consideration, and
   "(2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability, then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, 361, 371, or 374, as the case may be.
   "(b) Tax avoidance purpose.—
   "(1) In general.—If, taking into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made, it appears that the principal purpose of the taxpayer with respect to the assumption or acquisition described in subsection (a)—
   "(A) was a purpose to avoid Federal income tax on the exchange, or
   "(B) if not such purpose, was not a bona fide business purpose,
   then such assumption or acquisition (in the total amount of the liability assumed or acquired pursuant to such exchange) shall, for purposes of section 351, 361, 371, or 374 (as the case may be), be considered as money received by the taxpayer on the exchange."

tion involved in an otherwise tax-free exchange under § 351(a) assumes a liability of the transferor, the assumption will not be considered "other property or money" and no gain will be recognized with respect to the liabilities assumed. However, if the taxpayer's principal purpose in having the newly-formed corporation assume the liability is to avoid taxes or is not a bona fide business purpose, the assumption must be treated as "boot" to the taxpayer and the gain recognized as provided in § 351(b). The sole question presented in the instant case is whether the district court properly held that the taxpayer's principal motive in having his personal liability assumed by a newly-formed corporation which he controlled was a "bona fide business purpose."

The taxpayer, Clifford W. Wheeler,[6] had been associated for many years prior to 1958 with the Southland Corporation, whose activities included the operation and management of 7-Eleven Stores. In 1954, the taxpayer joined with a group to organize an operation in Florida. As a result, the taxpayer became owner of a nine per cent interest in 7-Eleven Stores of Florida, a partnership, and a nine per cent interest in 7-Eleven, Inc., of Florida, a corporation. The partnership flourished, but its management maintained a policy of reinvesting a substantial portion of its profits in the business. During fiscal 1958, taxpayer's share of the profits exceeded $36,000, and his individual income tax attributable to partnership earnings amounted to approximately $17,000. However, only $7,200 was actually distributed during the taxable year 1958. Since the amount distributed was insufficient to cover the tax liability allocable to the taxpayer's share of the partnership earnings for that year, it was necessary that he borrow sufficient funds to cover this liability. Taxpayer admits that on March 1, 1958, the partnership had enough cash on hand for the taxpayer to draw out his share of the undistributed profits ($11,049.96).[7] This amount could, of course, be withdrawn without his incurring any additional tax burden.[8] Because of the partnership's policy of plowing most of its earnings back into the venture and because of the strong personality of Mr. Thompson, the founder of the 7-Eleven enterprises and the leading figure in the management of 7-Eleven Stores of Florida, the taxpayer found it embarrassing to ask for permission to withdraw his share of the undistributed profits.

The above circumstances led the taxpayer to implement certain advice given to him by his attorney and accountant. Prior to the time his 1958 taxes fell due, he borrowed $12,000 from the Republic National Bank of Dallas, assigning as security for the loan a three per cent interest in the corporation and a three per cent interest in the partnership. Three days later the taxpayer transferred these two encumbered property interests to The Wheeler Company, a corporation that he created after the $12,000 loan was consummated, in exchange for all its capital stock and for the assumption of the $12,000 note made to the Republic Bank and accrued interest on that obligation of $3.33. At the time the original loan was made, taxpayer intended that The Wheeler Company would assume his liability to the bank.

The Internal Revenue Service determined that the assumption of the personal note to the bank constituted "boot" to the taxpayer and that, as provided in § 351(b), gain should be recognized to the extent of $12,003.33.[9] Taypayer paid the deficiency and interest which had been

---

6. Taxpayer's wife, Lillian V. Wheeler, is also a party because of her interest under the Texas community property laws.

7. When added to the $7,200 which was distributed in 1958, $11,049.96 would have been sufficient to cover taxpayer's estimated tax liability which was attributable to partnership earnings during 1958.

8. See 26 U.S.C.A. § 731.

9. The total gain realized on the transaction exceeded $50,000. The adjusted basis of the three per cent interests in the partnership and the corporation was $11,349.96, and the fair market value of the two interests was over $60,000.

assessed, and instituted this suit for refund in the district court. The trial judge held in the taxpayer's favor, concluding that the assumption was effected for a bona fide business purpose and not for the purpose of avoiding taxes [10] and, therefore, that the transaction fell within § 357(a) and § 351(a). Hence, the court held that no gain had to be recognized on the transfer.

Taking into consideration the circumstances surrounding the assumption of the liability, we conclude that as a matter of law the taxpayer did not sustain his burden of demonstrating "by a clear preponderance of the evidence," 26 U.S. C.A. § 357(b) (2), that the assumption was effected for a bona fide business purpose. We therefore reverse.

█ It seems clear that the taxpayer's principal reason for the creation of The Wheeler Company, the transfer of the three per cent interests in the Florida partnership and corporation, and the effectuation of the assumption of the $12,000 note was to facilitate the payment of his personal tax liability for 1958.[11] More specifically, it was to avoid the embarrassment of asking permission to withdraw this amount.[12] We assume, for purposes of deciding this appeal, that taxpayer's asserted apprehension in this regard was reasonable.

█ The payment of one's personal tax liability, even if it is derived in part from business enterprises, is a purely personal obligation. We do not perceive how, in the circumstances of the instant case,[13] facilitation of its payment can

10. The District Director does not contest the court's finding that the assumption was not effected with tax avoidance motives.

11. Of course, only the *transferor's* purpose in effecting the assumption of the liability is relevant under § 357(b). Neither the transferor's purpose in divesting himself of the underlying property interest nor the corporation's purpose in assuming the liability or taking subject to the encumbrance is directly material, see Easson v. Commissioner (9 Cir. 1961) 294 F.2d 653, but the statute does require that we take "into consideration the nature of the liability and the circumstances in the light of which the arrangement for the assumption or acquisition was made" in evaluating the transferor's motives.

12. The taxpayer delineates the crucial finding of the trial court as follows:
"Third, the Government's brief admits that 'On March 1, 1958, the partnership had sufficient cash on hand so that the taxpayer could have withdrawn his $11,049.96 distributive share of the undistributed profit.' The District Court's finding of fact, however, is subtly different; it found 'Although the Florida partnership had enough cash on March 1, 1958, so that Plaintiffs could have withdrawn $11,049.90, it would have been embarrassing to them to request permission to do so.'"
He then characterizes the issue to be decided on this appeal in the following language:
"It is equally clear that [taxpayer's] only purpose for not withdrawing these funds from the partnership, but instead borrowing money from Republic National Bank of Dallas and causing The Wheeler Company to assume such indebtedness, was to avoid the embarrassment of asking Jodie Thompson for permission to withdraw his money. The ultimate question thus is whether avoiding such embarrassment was a bona fide business purpose."

13. In this connection, note the discussion in Bittker, Federal Income Taxation of Corporations and Shareholders 86 (1959): "Although the principle of § 357(a) makes good sense as a general rule, it might tempt the transferor of property under § 351 to borrow against the property just before the exchange, with the intention of keeping the borrowed funds and of causing the corporation either to assume the liability or to take the property subject to it. For the transferor, this chain of events could be the equivalent of receiving cash 'boot' from the corporation in exchange for unencumbered property; but if the general rule of § 357(a) were applicable, the corporation's assumption of the liability or acquisition of the property subject to it would not be treated as 'boot.' To frustrate transactions of this type, § 357 (b) carves out an exception in the general rule of § 357(a) :"

be a bona fide business purpose for arranging an assumption of the taxpayer's personal note by a controlled corporation. Embarrassment arising from the personalities and relations of partners in a business venture, even if that embarrassment was considered by one partner a sufficient deterrent to cause him to refrain from asking for his undistributed share of the earnings of the business, cannot be classified as a bona fide business purpose for causing a controlled corporation to assume his personal indebtedness. Indeed, the legislative history indicates that § 357 was designed primarily to protect assumptions and transfers which follow in the ordinary course from the conversion of a business from one form to another, and the cases have generally reached results consistent with this approach.[14] While an assumption need not always be incident to the transfer of a business, it must be closely related to the taxpayer's business or motivated primarily by business, not personal, considerations. In the instant case, the considerations behind the taxpayer's having the liability assumed were primarily personal and gain must be recognized to the extent of the assumption.

Reversed.

---

14. See Jewell v. United States (9 Cir. 1964) 330 F.2d 761; Bryan v. Commissioner (4 Cir. 1960) 281 F.2d 238, cert. denied, 364 U.S. 931, 81 S.Ct. 378, 5 L. Ed.2d 364 (1961); Estate of Stoll v. Commissioner, 38 T.C. 223 (1962). In Jewell and Stoll, the liability assumed had been incurred by the individual taxpayer in the ordinary course of financing, acquiring, or operating the business which was the subject of the transfer. In Bryan, the amount assumed in excess of the expense incurred for business reasons was held subject to tax on the exchange.

In Easson v. Commissioner, supra note 11, the Ninth Circuit reached a result which is apparently inconsistent with the above cases. There, the taxpayer-transferor was the owner of an apartment house. He negotiated a large personal loan which was secured by a mortgage on the apartment house. Later he transferred the apartment house to a wholly-owned corporation without dis-

charging the mortgage. The Tax Court had found that the taxpayer was in the business of being an investor and that he transferred the property subject to the mortgage because he "desired to place himself in an extremely liquid position to take advantage of a business downturn which, he believed, would soon occur." 294 F.2d at 659. This, the court concluded, constituted a bona fide business purpose for an investor. On the other hand, the district court in the instant case found as a fact that the taxpayer was not an investor. To that extent, therefore, Easson is inapposite. Furthermore, language in the Easson and Jewell cases indicates that the Ninth Circuit would construe the "bona fide business purpose" standard of § 357(b) quite narrowly to include only those assumptions made without good business sense. We cannot agree with such an interpretation of § 357 in light of its legislative history.