FRANK P. BATTAGLIA and JEANNETTE M. BATTAGLIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Battaglia v. Commissioner
Docket No. 8767-77.
United States Tax Court
T.C. Memo 1981-451; 1981 Tax Ct. Memo LEXIS 296; 42 T.C.M. (CCH) 817; T.C.M. (RIA) 81451; August 24, 1981. *296 Petitioner Frank P. Battaglia and another individual operated a business as a partnership. In 1971, they incorporated the partnership business by transferring the partnership assets to a newly formed corporation in exchange for all of its stock. Petitioner also received a short-term promissory note from the corporation. In 1972, petitioner sold all of his stock in the corporation. Held, the promissory note issued by the corporation to petitioner constituted "other property" received by petitioner pursuant to the exchange, within the meaning of section 351(b), I.R.C. 1954. Held further, petitioner's sale of his entire interest in the corporation requires the recapture of investment credits claimed in prior years with respect to the partnership property transferred to the corporation. Sec. 47(a)(1), I.R.C. 1954. Held further, respondent's determination of petitioner's distributive share of partnership income for 1970 is sustained. Curtis A. Levin, for the petitioners. Jan R. Pierce, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1970
$ 2,166.34
1971
15,668.88
1972
741.48
The issues for decision are: 1. Whether petitioner Frank P. Battaglia received "other property" within the meaning of section 351(b)[1] in connection with a transaction whereby petitioner and his partner transferred the assets and liabilities of their partnership to a corporation in exchange for all of its issued stock. 2. Whether petitioner Frank P. Battaglia's subsequent sale of his stock in the corporation requires the recapture under section 47 of investment *299 credits taken in prior years with respect to the partnership property transferred to the corporation. 3. Whether respondent correctly determined petitioner Frank P. Battaglia's distributive share of partnership income for 1970. FINDINGS OF FACT All of the facts have been stipulated and are found accordingly. Frank P. Battaglia (hereinafter petitioner) and Jeannette M. Battaglia, husband and wife, resided in Portland, Oregon, when they filed their 1970, 1971, and 1972 Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah, and when they filed their petition in this case. On April 1, 1960, petitioner and Thomas Torchia (hereinafter Torchia) formed a partnership to engage in the business of interstate transportation of produce, using the name Produce Transport Dispatch (hereinafter "the partnership"). Petitioner owned a 51 percent interest in the partnership, while Torchia owned a 49 percent interest therein. The partnership used the accrual method of accounting. On October 1, 1962, the partnership obtained a certain operating authority issued by the Interstate Commerce Commission (hereinafter "ICC") which was assigned No. MC-124603. On October 6, 1970, petitioner *300 and Torchia executed Articles of Incorporation for Produce Transport Dispatch, Inc. (hereinafter "the corporation") which specifically provided that the corporation was organized to operate as a common carrier of property. On November 9, 1970, they filed the Articles of Incorporation with the Corporation Commission of the State of Oregon and were issued a Certificate of Incorporation. On December 9, 1970, the incorporators (petitioner and Torchia) opened a book for the subscription of stock. Petitioner subscribed to 5,100 shares of stock, and Torchia subscribed to 4,900 shares of stock. On December 9, 1970, the board of directors of the corporation held its first meeting. The members of the board of directors were petitioner, Torchia, and Stephen Parker (hereinafter Parker). At the first meeting of the board of directors, petitioner was elected president and treasurer, Torchia was elected vice-president, and Parker was elected secretary. During the meeting, petitioner and Torchia agreed to transfer all of the assets of the partnership to to the corporation in payment for the stock to which they had subscribed, but Parker informed them that such a transfer could not be made until *301 an order was obtained from the ICC approving a transfer of the operating authority held by the partnership. Under these circumstances, petitioner and Torchia agreed to postpone taking any further steps in organizing the corporation until the ICC approved the transfer of the operating authority. Accordingly, the board of directors unanimously adopted the following resolution: RESOLVED, that Frank P. Battazglia and Thomas Torchia, as individuals and as partners doing business as Product Transport Dispatch, shall transfer to Produce Transport Dispatch, Inc., an Oregon corporation, all assets of the partnership in exchange for the stock of the corporation to which each partner subscribed; and BE IT FURTHER RESOLVED that such transfer shall not be made unless and until the Interstate Commerce Commission shall approve a transfer of all operating rights presently held by Frank P. Battaglia and Thomas Torchia individually and as partners under docket No. MC 124603 to the corporation; and BE IT FURTHER RESOLVED that Produce Transport Dispatch, Inc., as a corporation, shall conduct no business of any kind, nature or description unless and until the aforesaid transfer of operating rights *302 is approved; and BE IT FURTHER RESOLVED that in the event the Interstate Commerce Commission shall approved said transfer of operating rights from Frank P. Battaglia and Thomas Torchia, individually and as partners doing business as Produce Transport Dispatch, to Produce Transport Dispatch, Inc., Frank P. Battaglia and Thomas Torchia shall transfer all assets of the partnership, as reflected on the books, ledgers and records of the partnership, as of the date said Commission approval is granted, to Produce Transport Dispatch, Inc.; and BE IT FURTHER RESOLVED that when said partnership assets have been properly transferred to the corporation, the president and secretary of Produce Transport Dispatch, Inc., a corporation, shall be authorized to issue to Frank P. Battaglia 5100 shares and to Thomas Torchia 4900 shares of the no par value common stock of Produce Dispatch, Inc., and the corporation shall assume thereafter the outstanding liabilities of Frank P. Battaglia and Thomas Torchia, partners doing business as Produce Transport Dispatch. On December 28, 1970, petitioner and Torchia entered into an agreement (hereinafter "the purchase agreement") whereby petitioner agreed to *303 purchase Torchia's 49 percent interest in the corporation, represented by the 4,900 shares of stock which would be issued to him in exchange for his interest in the partnership assets when the ICC approved the transfer of the operating authority to the corporation. The purchase agreement provided, in part, as follows: I Subject of Sale
Torchia agrees to sell and Battaglia agrees to buy the 49% interest in Produce Transport Dispatch, Inc. of Torchia, represented by the ownership of 4900 shares of the common stock, no par value, which will be issued to him in exchange for his 49% interest in Produce Transport Dispatch, a partnership, if and when the Commission approves the aforesaid transfer application. By agreement of the partners, the 49% partnership interest to be transferred by Torchia to the corporation in exchange shall not include: (1) One of the two Mustang automobiles presently owned by the partnership. Said automobile shall be transferred and delivered to Torchia, free and clear of all encumbrances, at any time hereafter at his request. (2) Torchia's capital account. The parties have stipulated and agreed that said capital account, consisting of cash and *304 accounts receivable, is the sum of $ 17,500.00 which sum may be withdrawn by Torchia from the partnership at any time. The stipulation of the parties as to the value of Torchia's capital account in the sum of $ 17,500 shall be binding on the parties, without regard to the date on which the Commission approves said transfer application, or the date on which said capital account is withdrawn. II Consideration for Sale
The total consideration for the sale by Torchia of his 4900 shares of corporate stock shall be the sum of $ 65,000, to be paid as follows: (1) The sum of $ 15,000 in cash upon the execution of this agreement, receipt of which is hereby acknowledged by Torchia. (2) The sum of $ 50,000 upon the execution of this agreement in the form of Battaglia's personal promissory note. Said note shall provide: (a) The sum of $ 50,000 shall be paid in equal monthly installments of $ 1,666.66 for a period of thirty months, the first payment being due one month from the date of said note. (b) Said note shall provide for interest at the rate of 3% per annum on the unpaid balance, interest to be paid monthly, together with and in addition to the payments on principal. *305 (c) Said note shall permit prepayment at any time without penalty. (d) As security for the payment of said note Battaglia shall pledge to Torchia 51% of the stock of Produce Transport Dispatch, Inc., the same to be held by an escrow agent to be agreed upon by the parties. Said pledge and escrow agreement shall continue until said note, both principal and interest, has been paid in full. During the period of pledge Battaglia shall be entitled to vote said shares and to receive all dividends thereon. III Issuance and Transfer of Stock
Immediately after obtaining Commission approval of the transfer of the aforesaid operating authority, the parties agree to execute all necessary papers to activate Produce Transport Dispatch, Inc., including the issuance of 5100 shares of no par value stock to Battaglia and 4900 shares of no par value stock to Torchia. Torchia thereupon agrees to transfer and assign the 4900 shares received by him to Battaglia as provided by Articles I and II above. The 5100 shares received by Battaglia shall be placed in escrow pursuant to II(2)(d) above, subject to being delivered to Battaglia upon payment in full of the promissory note described *306 in II(2). In the event that the ICC did not approve the transfer of the operating authority to the corporation, the purchase agreement provided that Torchia would sell his interest in the partnership to petitioner under the following terms: IV Miscellaneous Provisions
4. Alternative Provisions
(a) In the event Commission approval is not obtained of said transfer to the corporation, Torchia shall be under no obligation to become a party to the activation of Produce Transport Dispatch, Inc. by transferring his partnership assets to said corporation or fulfilling any promise, actual or implied, to subscribe to or pay for stock in said corporation, and neither party shall transfer any of his interest in the partnership or any assets of the partnership to the corporation without the express mutual consent of both partners. (b) Torchia agrees, however, that in the event Commission approval of the transfer to the corporation is refused, he will join with Battaglia in seeking a transfer of the operating authority under MC 124603 from Battaglia and Torchia to Battaglia. Upon approval from the Commission of such transfer, Torchia shall join with Battaglia in dissolving *307 the present partnership. In such event, Torchia shall sell and Battaglia shall buy the partnership interest of Torchia for the same price and upon the same terms and conditions as set forth in this agreement in respect to the sale of stock in Produce Transport Dispatch, Inc., a corporation, provided, however, that in lieu of a pledge of stock as security for the promissory note, Battaglia shall deliver to Torchia titles to four tractors and semi-trailers. Torchia agrees that the four titles will represent security for the total sum of $ 50,000 and agrees to surrender one or more titles as the unpaid balance is reduced, having the right only to ret ain titles to equipment the current value of which equals said unpaid balance. (c) In the event the transfers contemplated by the terms of IV, 4 (a) and (b) are both denied, the parties agree that the partnership shall be dissolved and that Torchia will sell and Battaglia will purchase the partnership interest of Torchia on the same basis as set forth in IV, 4 (b) above. In such event Torchia expressly releases any interest, direct, indirect or beneficial, in the operating rights under Docket MC 124603 and agrees to join with Battaglia *308 in such further application to transfer said authority as Battaglia may deem appropriate under the circumstances. Battaglia agrees to hold Torchia harmless from any and all liabilities arising from, or in any wise connected with, the operations, if any, conducted by Battaglia under the foregoing circumstances. Finally, the purchase agreement provided that upon the parties performance of the promises and covenants set forth therein Torchia would release all right, title, and interest in the partnership as of December 2, 1970, and would make no claim of ownership in the corporation, subject only to the terms of the agreement. On the date he executed the purchase agreement, petitioner also executed a promissory note to Torchia for $ 50,000, payable in monthly installments of $ 1,666.66. On February 19, 1971, the ICC issued a preliminary order approving the transfer of the operating authority from the partnership to the corporation. The order became effective on April 11, 1971, and required the transfer of the operating authority to the corporation within 90 days from such date. In March 1971, petitioner indicated that he wanted to withdraw all of the cash he possibly could *309 from the partnership and loan it to the corporation in exchange for a promissory note. On March 31, 1971, petitioner received a promissory note in the amount of $ 45,000 from the corporation which was payable in 27 monthly installments of $ 1,666.66 with interest at a rate of 8 percent per annum. At that time, the partnership had cash and accounts receivable of $ 46,318.88 and none of those assets had been transferred either to the corporation or to petitioner in his individual capacity. As of March 31, 1971, petitionr had made three payments to Torchia under the promissory note he had executed pursuant to the purchase agreement, leaving a balance due thereunder of $ 44,999.96. For the priod from January 1, 1971 through April 30, 1971, the partnership filed its final partnership return of income (Form 1065). The return stated that the assets and liabilities of the partnership were transferred to the corporation on May 1, 1971. An attached statement showed that cash and accounts receivable of $ 43,112.22 [2] were transferred to the corporation. Schedule K (Partners' Share of Income, Credits, Deductions, Etc.) of the return reported ordinary income and payments to partners of $ *310 16,951 and $ 2,210, respectively, all of which was allocated to petitioner and subsequently reported by him on his 1971 tax return. On July 7, 1971, the ICC issued a Certificate of Public Convenience and Necessity to the corporation, representing the ICC's final approval of the transfer of the operating authority from the partnership to the corporation. On July 9, 1971, a special meeting of the board of directors of the corporation was held. During that meeting, a resolution was adopted whereby petitioner and Torchia agreed to transfer the partnership assets to the corporation in exchange for the stock to which they had subscribed. Sometime between May 1, 1971 and July 9, 1971, the assets and liabilities of the partnership, including the cash and accounts receivable, were formally transferred to the corporation. In exchange therefor, petitioner and Torchia received the shares of stock *311 to which they had subscribed. Thereafter, Torchia transferred the stock he received to petitioner as required under the purchase agreement. On October 3, 1972, petitioner entered into an agreement (hereinafter "the sales agreement") whereby he sold 100 percent of the corporation's stock to Coast States Trucking, Inc., for $ 150,000. [3]
On his 1970 return, petitioner reported $ 38,616 as his distributive share of partnership income. In the notice of deficiency, respondent determined that petitioner's distributive share of partnership income for 1970 was $ 42,483. On his 1971 return, petitioner did not report any gain from the transfer of his interest in the partnership assets to the corporation. Respondent determined that the promissory note which the corporation issued to petitioner constituted "other *312 property" received in exchange for the transfer of his interest in the partnership assets to the corporation within the meaning of section 351(b), and therefore, to the extent of the value thereof he must recognize the gain realized upon such transfer. Finally, respondent determined that due to the sale of his stock in the corporation petitioner was subject to an investment credit recapture in 1972 for $ 1,539.54 for investment credits taken in prior years with respect to the partnership property transferred to the corporation. OPINION We must decide whether the promissory note that the corporation issued to petitioner constituted "other propertyc received in exchange for the transfer of the partnership assets to the corporation within the meaning of section 351(b).
Section 351[4] provides, in part, that no gain or loss shall be recognized where property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation if immediately thereafter such person or persons are in control of the corporation. However, if the transferor receives *313 "other property," in addition to stock or securities, section 351(b) requires the recognition of any gain realized upon the transfer to the extent of the fair market value of such other property. *314 While respondent concedes that petitioner's transfer of his interest in the partnership assets to the corporation falls within the ambit of section 351, he maintains that petitioner received not only stock but "other property" in exchange therefor. It is respondent's position that the promissory note which the corporation issued to petitioner constituted "other propertyc received in exchange for the partnership assets under section 351(b). Accordingly, respondent insists that petitioner must recognize the gain he realized upon the transfer of the partnership assets to the corporation to the extent of the fair market value of the note. Petitioner maintains that he did not receive the note as part of the section 351 exchange whereby the partnership assets were transferred to the corporation in exchange for its stock. [5] According to petitioner, instead of withdrawing the cash and accounts receivable from the partnership and requiring the corporation to fund working capital requirements through outside borrowing, he loaned the corporation $ 45,000 and received the promissory note in exchange therefor. Consequently, petitioner contends that the note did not constitute other property *315 under section 351(b), and therefore, he is not required to recognize any gain under section 351. We hold for respondent. On the record before us, we must conclude that the transfer of the cash and accounts receivable from the partnership to the corporation was part of the section 351 exchange whereby the partnership business was incorporated and that petitioner received the promissory note pursuant to that exchange. The evidence simply does not support the contention that petitioner loaned the corporation cash and accounts receivable in exchange for the note pursuant to a transaction separate and apart from the transfer of the other partnership assets to the corporation. Prior to the execution of the purchase agreement, petitioner and Torchia agreed to transfer all of the partnership assets to the corporation in exchange for its stock. Petitioner and Torchia were prepared to transfer the partnership assets to the corporation in 1970 and only the need for ICC approval of the transfer of the operating authority prevented them from transferring the partnership assets at that *316 time. While awaiting ICC approval, petitioner decided he wanted to loan the partnership cash to the corporation in exchange for a note. It is clear that petitioner wanted the note to provide himself with a source of funds with which to make the monthly payments required under the promissory note he had given to Torchia, and he has so conceded. On March 31, 1971, petitioner obtained the note but did not transfer any property to the corporation. At least one month passed before the partnership assets, including the cash and accounts receivable, were transferred to the corporation. While petitioner initially indicated a desire to withdraw cash from the partnership and separately loan it to the corporation, no such withdrawal and separate loan were ever accomplished. Nevertheless, petitioner argues that Torchia's interest in the partnership terminated in 1970, and therefore, he had the right to deal with the partnership assets in any manner which he desired. Thus, petitioner maintains that he was entitled to loan the cash and accounts receivable to the corporation and that such a loan was consummated when the cash and accounts receivable were transferred to the corporation together *317 with the other partnership assets. Essentially, petitioner is requesting this Court to disregard the form in which he and Torchia agreed to cast this transaction and find that, in substance, he purchased Torchia's partnership interest and was the sole owner of the partnership assets when those assets were transferred to the corporation. Where a taxpayer seeks to vary the form in which a transaction is cast pursuant to an arm's-length bargain, this Court requires strong proof that the form of the transaction does not reflect its substance. Miami Purchasing Service Corp. v. Commissioner, 76 T.C. 818 (1981); Major v. Commissioner, 76 T.C. 239 (1981), on appeal (7th Cir. July 7, 1981). See also Schulz v. Commissioner, 294 F. 2d 52 (9th Cir. 1961), affg. 34 T.C. 235 (1960). Petitioner has failed to establish by strong proof that, in substance, he purchased Torchia's partnership interest and was therefore entitled to independently loan partnership assets to the corporation. In support of his argument that Torchia's interest *318 in the partnership terminated in 1970, petitioner relies on the fact that the purchase agreement provided that upon the performance of the provisions and covenants set forth therein Torchia would release his interest in the partnership as of December 2, 1970. In addition, petitioner emphasizes that the final partnership return, filed for the period from January 1, 1971 through April 30, 1971, allocated all of the partnership income to him. Nevertheless, we cannot conclude that petitioner acquired the note in exchange for a loan of certain partnership assets to the corporation when he and Torchia had already agreed to transfer their entire interest in such assets to the corporation in exchange for its stock. Moreover, the purchase agreement did not alter, but rather affirmed the agreed transfer of those assets to the corporation and provided that petitioner would purchase Torchia's resulting stock interest, not his partnership interest. Although the purchase agreement provided that certain partnership assets would be transferred to Torchia, there is nothing therein which entitled petitioner to deal with the remaining assets as his separate property. While the purchase agreement provided *319 that petitioner would purchase Torchia's partnership interest if the ICC did not approve the transfer of the operating authority to the corporation, this contingency did not arise. Prior to the transfer of the partnership assets to the corporation, the partnership was never dissolved. Indeed, the purchase agreement clearly contemplated the continuing existence of the partnership until the transfer of its assets to the corporation. While Torchia agreed to the retroactive release of his entire interest in the partnership upon the consummation of the purchase agreement, petitioner did not establish that Torchia had already relinquished his interest in the partnership assets when petitioner purportedly agreed to loan $ 45,000 of those assets to the corporation in exchange for the promissory note. Nor was any evidence presented which indicates that Torchia agreed to petitioner's purported loan of partnership funds to the corporation. The fact that all of the income reported on the final partnership return was allocated to petitioner does not establish that petitioner purchased Torchia's partnership interest. In fact, no evidence was offered to explain this allocation. Although the *320 record indicates that the first payment due under the note issued to petitioner was made with partnership funds prior to the transfer to the corporation, we accord little significance to this fact since at that time, the ICC had given its preliminary approval to the transfer of the operating authority and the transfer of the partnership assets to the corporation was imminent. Consequently, we must conclude that petitioner was not entitled to loan any of the partnership assets to the corporation and that he received the promissory note as part of the consideration for the transfer of his partnership interest to the corporation. Indeed, even if we agreed that petitioner was entitled to loan partnership property to the corporation, petitioner has not established a sufficient factual basis to allow us to find that he received the note pursuant to a transaction which must be considered separately from the incorporation of the partnership business. While petitioner has argued that he loaned the cash and accounts receivable to the corporation so that it would not have to resort to outside borrowing to fund working capital requirements, he failed to present any evidence indicating that *321 the corporation could have obtained funds from outside sources. Thus, if the corporation could not fund its working capital requirements through outside borrowing, the transfer of the partnership cash and accounts receivable to the corporation would have been indispensable to the incorporation of the partnership business. To the extent that working capital was needed to operate the business, the transfer of the cash and accounts receivable to the corporation would have been inseparably related to the transfer of the other partnership assets. [6] Cf. D'Angelo Associates, Inc. v. Commissioner, 70 T.C. 121, 130-131 (1978); Nye v. Commissioner, 50 T.C. 203, 211-212 (1968); American Bantam Car Co., 11 T.C. 397, 404-408 (1948), affd. per curiam 177 F. 2d 513 (3d Cir. 1949), cert. denied 339 U.S. 920 (1950). Under these circumstances, we could not find that petitioner's purported loan of the cash and accounts receivable to the corporation was a separate transaction to which section 351 was inapplicable.
*322 Finally, relying on Jewell v. United States, 330 F. 2d 761 (9th Cir. 1964), petitioner argues that under section 357 the note may not be treated as "other property" for purposes of section 351(b). We must reject this argument.
Section 357 provides, in part, as follows: (a) General Rule.--Except as provided in subsections (b) and (c), if-- (1) the taxpayer receives property which would be permitted to be received under section 351, * * * without the recognition of gain if it were the sole consideration, and (2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability, then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, * * * Apparently, petitioner is contending that by issuing him the note the corporation assumed his liability to Torchia within the meaning of section 357, and therefore, the note may not be treated as "other property" under section *323 351. We disagree. It is clear that the corporation never assumed petitioner's obligation to Torchia. The case of Jewell v. United States, supra, relied on by petitioner, is readily distinguishable. In Jewell, the taxpayer transferred assets to a newly formed corporation in exchange for its stock. Pursuant to the transfer, the corporation actually assumed a liability of the taxpayer by issuing a note to his creditor while the taxpayer's note to the creditor was cancelled. In Jewell, the principal issue addressed by the Court of Appeals for the Ninth Circuit was whether the nature of the liability assumed by the corporation would permit its exclusion from the definition of "other property or money" under the predecessor of section 357. [7] The Ninth Circuit held that the corporation's assumption of the liability was so excluded and, therefore, the note issued by the corporation could not be treated as "other property" received by the taxpayer. Thus, in Jewell, the note was issued to the taxpayer's creditor pursuant to an undisputed assumption of the taxpayer's liability by the corporation. *324 In the instant case, however, there was no such assumption of petitioner's liability to Torchia by the corporation. While petitioner acquired the note from the corporation to assure himself of a source of funds with which to make the monthly payments required under the note he had given to Torchia, petitioner alone remained liable to Torchia and could have made the payments with any funds that were available to him. He was not required to satisfy his obligation to Torchia with the monthly payments he received under the note issued to him by the corporation. The mere fact that petitioner intended to use and may have actually used the note to satisfy his obligation to Torchia is not significant. [8]The corporation issued the note to petitioner for his benefit and was liable to him alone. Since the corporation did not assume petitioner's liability to Torchia by issuing the note, section 357 does not preclude treating the note as "other property" for purposes of section 351. Accordingly, we hold that petitioner has failed to prove that he did not receive the note pursuant to the section 351 exchange, *325 and therefore, we must sustain respondent's determinationthat the note constituted "other property" under section 351(b). We next consider whether petitionerhs sale of his stock in the corporation to Coast States Trucking, Inc., requires the recapture under section 47 of investment credits he claimed in prior years with respect to the partnership property which was transferred to the corporation.
Section 47(a)(1)[9] requires a taxpayer to recapture investment credits claimed under section 38 whenever the underlying property "is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit." Section 47(b) provides an exception to such recapture provisions when section 38 property is disposed of "by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a *326 substantial interest in such trade or business." Section 1.47-3(f)(1)(ii), Income Tax Regs., sets forth the following requirements for a disposition to qualify as "a mere change in the forms of conducting the trade or business": *327 (a) The section 38 property * * * is retained as section 38 property in the same trade or business, (b) The transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of such section 38 property retains a substantial interest in such trade or business, (c) Substantially all the assets (whether or not section 38 property) necessary to operate such trade or business are transferred to the transferee to whom such section 38 property is transferred, and (d) The basis of such section 38 property in the hands of the transferee is determined in whole or in part by reference to the basis of such section 38 property in the hands of the transferor. However, if at any time after "a mere change in the form of conducting the trade or business" the transferor does not retain a substantial interest in such trade or business, the exception contained in section 47(b) will cease to apply and recapture will be required under section 47(a)(1). Sec. 1.47-3(f)(5)(ii), Income Tax Regs. *328 [10] See also Aboussie v. Commissioner, 60 T.C. 549 (1973), affd. mem. 504 F. 2d 758 (5th Cir. 1974). *329 When the partnership business was incorporated in 1971, pursuant to section 47(b) petitioner was not required to recapture the investment credits he had claimed with respect to the partnership property transferred to the corporation because the incorporation represented a mere change in the form of conducting the business and petitioner had retained a substantial interest therein. In 1972, however, petitioner sold all of his stock in the corporation. In the absence of any evidence to the contrary, we must conclude that he thereby disposed of his entire interest in the corporation and its business and, therefore, was subject to the investment credit recapture required under section 47(a)(1) in 1972. On the basis of the record before us, we must sustain respondent's determination. The final issue for decision is whether respondent correctly determined petitioner's distributive share of partnership income for 1970. Petitioner has failed to offer any evidence to rebut respondent's determination of his distributive share of partnership income for 1970. Accordingly, since petitioner did not satisfy his burden of proof, we must hold for respondent on this issue. See Rule 142(a), *330 Tax Court Rules of Practice and Procedure.
To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue.↩
2. Under the note that the corporation had issued to petitioner, the first payment was due on April 1, 1971. The record indicates that this payment was made using partnership funds prior to the transfer of the partnership assets. At that time, the balance due under the note was $ 43,333.34.↩
3. On October 19, 1972, the parties to the sales agreement executed an addendum thereto in order to clarify certain matters. In particular, they wanted to affirm their intent that the sales agreement consummated a sale of the corporation's stock and not a sale of equipment either by petitioner or the corporation. The sales agreement was somewhat confusing on this point.↩
4. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) General Rule.--No gain or loss shall be recognized if property is transferred to a corporation * * * by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property. (b) Receipt of Property.--If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then-- (1) gain (if any) to such recipient shall be recognized, but not in excess of-- (A) the amount of money received, plus (B) the fair market value of such other property received; and (2) no less to such recipient shall be recognized.↩
5. Petitioner has conceded that the note did not constitute a security for purposes of section 351↩.
6. In Makover v. Commissioner, T.C. Memo. 1967-53, a partnership transferred its business assets to a corporation in exchange for all of its stock and at the same time loaned the corporation $ 100,000 in cash in exchange for a demand note. This Court held that the note did not constitute other property under section 351(b) because the transfer of the cash from the partnership to the corporation was not part of the plan for incorporating the partnership business. In Makover↩, however, the Court specifically found that the corporation could have borrowed whatever funds it needed from outside sources and that the transfer of the partnership business to the corporation could have been accomplished without the transfer of the cash.
7. Sec. 112(k) of the Internal Revenue Code of 1939↩.
8. See Winterburn v. Commissioner, T.C. Memo. 1968-187↩.
9. SEC. 47. CERTAIN DISPOSTIONS, ETC., OF SECTION 38 PROPERTY. (a) General Rule.--Under regulations prescribed by the Secretary or his delegate-- (1) Early disposition, etc.--If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38↩ property.
10. Sec. 1.47-3(f)(5)(ii), Income Tax Regs., states: (ii) If in any taxable year the transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of the section 38 property described in subparagraph (1)(i) of this paragraph does not retain a substantial interest in the trade or business directly or indirectly (through ownership in other entities provided that such other entities' bases in such interest are determined in whole or in part by reference to the basis of such interest in the hands of the transferor) then, under paragraph (a) of § 1.47-1, such property ceases to be section 38↩ property with respect to the transferor and he (or the partner, beneficiary, or shareholder) shall make a recapture determination. For purposes of recomputing qualified investment with respect to property described in this subdivision, its actual useful life shall be the period beginning with the date on which it was placed in service by the transferor and ending with the first date on which the transferor (or the partner, beneficiary, or shareholder) does not retain a substantial interest in the trade or business. Any taxpayer who seeks to establish his interest in a trade or business under the rule of this subdivision shall maintain adequate records to demonstrate his indirect interest in such trade or business after any such transfer or transfers.